**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION)**

The Kroger Co.,                                           Civil Action No:

        Plaintiff,

vs.

Visa Inc.,

        Defendant.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff The Kroger Co. ("Kroger") sues Defendant Visa Inc. ("Visa") as alleged below.

This Complaint is organized as follows:

OVERVIEW ............................................................................................................. 2

PARTIES ................................................................................................................... 7

JURISDICTION ........................................................................................................ 7

VENUE ...................................................................................................................... 9

DEFINITIONS........................................................................................................... 9

FACTUAL ALLEGATIONS ....................................................................................11

    A.    The Advantages of PIN Debit Over Signature Debit .....................................11

        (i)    PIN Debit Provides Better Fraud Prevention ........................................12

        (ii)    Merchants Can Choose Among Multiple Networks for Processing PIN Debit Transactions on Visa Debit Cards .........................................13

        (iii)    Merchants Often Cannot Choose Among Multiple Debit Networks for Processing Signature Debit Transactions on Visa Debit Cards ........16

        (iv)    Visa Has Taken Steps to Inhibit the Adoption of PIN-less Routing .......18

    B.    The Migration to Chip Cards and PIN.........................................................19

    C.    Visa Approved Kroger's Chip-Enabled POS Terminal Specifications Before Kroger's Roll-Out ...........................................................................22

D.  Visa Blocks Kroger's Effort to Require a PIN for Debit Chip Cards and Inhibits Kroger's Routing Options ............................................................29

E.  Visa Uses Its Technical Specifications for Chip Card Acceptance to Further Limit Kroger's Routing Choices ......................................................33

F.  Visa's Commercial Threats and Millions of Dollars in Fines Have Forced Kroger to Discontinue the POS PIN Verification Requirement, Reconfigure the Software in its POS Terminals, and Stop PIN-less Routing, Each of Which Inhibits Kroger's Ability to Route Visa Debit Transactions to Rival Debit Networks ........................................................36

COUNT I – DECLARATORY JUDGMENT (Regarding PIN Requirement) .........................38

COUNT II – DECLARATORY JUDGMENT (Regarding Visa Technical Specifications) .......39

COUNT III – DECLARATORY JUDGMENT (Regarding Visa Interference with PIN-less Routing) ................................................................................................................41

COUNT IV – PROMISSORY ESTOPPEL (Regarding Visa Technical Specifications) ..........42

COUNT V – NEGLIGENT MISREPRESENTATION (Regarding Visa Technical Specifications) ........................................................................................................44

PRAYER FOR RELIEF – COUNTS I, II AND III .............................................................46

PRAYER FOR RELIEF – COUNTS IV AND V ................................................................46

## OVERVIEW

1.      Starting in October 2015, in response to Visa and other branded payment card networks' requirement that U.S. merchants have point-of-sale ("POS") terminals that would accept chip-enabled debit and credit cards, Kroger rolled out approximately 54,000 new chip terminals in about 3,200 stores nationwide.[1]  The POS terminals were configured to enable Kroger to route Visa and other branded debit card transactions for processing not just by Visa but also by other third party debit networks that were able to do so.  These routing choices

---

[1]      This case concerns debit cards.

made use of federal law,[2] which promotes price competition among debit networks for merchants' debit card volume and expressly prohibits payment card networks (like Visa), "by contract, requirement, condition, penalty, or otherwise," from "inhibit[ing] the ability" of a merchant to route debit transactions among debit networks that are able to process them. Kroger enabled its routing options by configuring its POS chip terminals to use a software specification that allowed for routing to multiple networks and to require cardholders to input their personal identification numbers ("PIN") in the terminal to verify the card. Requiring a PIN increased Kroger's routing options for debit card transactions and made them more secure than using the cardholder's signature, which can be easily forged. Before Kroger implemented these specifications, it sought and obtained Visa's approval of them.

2.      In a sudden and drastic change of direction seemingly motivated by an intention to restrain competition, <u>after</u> Kroger rolled out its new chip-enabled POS terminals nationwide, Visa informed Kroger that its terminal configuration did not comply with Visa's "Rules." (MasterCard, the other branded debit network, did not object to the configuration in Kroger's POS terminals, which treated MasterCard debit transactions the same way as Visa debit transactions.) Visa maintained that its "Rules" trumped federal law, and its prior approval of Kroger's chip terminal configuration did not matter. Visa demanded that Kroger re-configure its terminals to remove the required (and more secure) PIN verification, and to use a Visa "application identifier" (known as an "AID") that would force a given Visa debit transaction to be routed to Visa for processing, regardless of whether the cardholder used PIN or signature to

---

[2]      Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Durbin Amendment"), Publ. L. No. 111-203, 124 Stat. 1376 (2010) at 15 U.S.C. § 1693o-2 (Supp. IV 2010), and 12 C.F.R. § 235.7(b); *see infra* ¶¶ 83-87.

verify the card.[3]  Visa threatened that if Kroger did not make these system-wide changes, and do so quickly, then Visa would fine Kroger for not complying with Visa's rules.

3.     Kroger tried to convince Visa in correspondence, telephone calls, and in-person meetings that Visa's approach was misguided and wrong.  Kroger took the principled position that what it was doing at the POS with Visa debit cards was supported by federal law (and Visa's efforts to inhibit Kroger's routing ability was not), made the transaction more secure,[4] and had been approved by Visa before Kroger rolled out its new chip-enabled POS terminals system-wide.

4.     When Kroger would not give in to Visa's threats, Visa initially started fining Kroger, and then ramped up the fines and pressure on Kroger to do what Visa demanded with still more heavy-handed punishment: (i) Visa fined Kroger a total of $7 million (of which Kroger has paid $3.1 million to date); (ii) Visa "suspended" a pricing agreement with Kroger and informed Kroger that Visa is going to increase the prices that it charges Kroger to process debit

---

[3]     Visa demanded that Kroger re-configure its terminals to function with the Visa AID, and to include a POS screen asking the cardholder to select between the "Visa's AID" and a generic "US Common Debit AID" (as if cardholders would even understand what this means), which would allow routing to other debit networks.  If a Visa cardholder selected the "Visa AID," then Kroger had no choice but to route the transaction to Visa.  Kroger's software vendor informed Visa that at present, it was unable to re-program Kroger's terminals in this way, but when it develops that capability, Visa has signaled that it expects Kroger to display the "Visa AID" versus "US Common Debit AID" on its terminal screens.

[4]     Visa has known since at least 1990 that the entry of a PIN makes a debit card transaction more secure.  Visa has admitted publicly several times that PIN entry reduces fraud, and the U.S. Government has echoed this conclusion.  In fact, a 2011 Federal Reserve report found that fraud losses on debit card transactions were more than 700% higher when a signature is used instead of a PIN to verify the transaction.  And MasterCard, the second-largest debit card network, has itself recognized the fraud prevention benefits of PIN entry and, as noted above, has not objected to Kroger requiring a PIN to verify MasterCard debit card transactions.  One would think that Visa would welcome a practice that would reduce fraud on Visa debit cards.  Indeed, in Europe, Australia, and elsewhere, Visa has promoted the entry of a PIN to verify Visa debit card and credit card transactions.  *See infra* ¶¶ 59-63.  However, in the United States, Visa is now taking the opposite position.

card and credit card transactions; and (iii) Visa threatened to cut off Kroger's ability to accept all Visa debit cards, even those that are not chip cards.  *See infra* ¶¶ 97-99.

5.      These threats and fines were (and are) of no small matter to Kroger.  Consider that in 2015, there were approximately $29 billion in Visa debit card transactions at Kroger, including about $10 billion Visa signature debit transactions and about $19 billion Visa PIN debit transactions.  There is no rational basis for Visa to cut off Kroger's ability to accept any or all Visa debit cards unless Visa intended to punish Kroger.  Doing so threatened catastrophic consequences for Kroger's business, including turmoil at the check stand as Kroger customers were unable to pay, and the loss of Kroger customers who insisted on using a Visa debit card to pay and thus went elsewhere to shop.  Even for a company of Kroger's scale, Visa's fines, its threats to continue fining Kroger, and its threats to cut off Kroger's ability to accept Visa debit cards were significant to Kroger, and Visa knew this.

6.      Despite Kroger's belief that federal law, Visa's prior approval, and common sense supported its more secure PIN verification and POS terminal configuration, in the end, the effect of Visa's threats, fines, and other actions forced Kroger – a nationwide merchant with thousands of stores – to capitulate to Visa's demands, end the more secure PIN verification requirement, and change its POS terminal configuration, which now inhibits Kroger's routing options for Visa debit transactions.  Visa approved of these changes by Kroger after sending a Visa employee to a Kroger store to test them by purchasing baskets of goods of varying amounts and paying for them with a Visa debit card.[5]  In acknowledging Kroger's capitulation, Visa ominously warned that it would reinstate the fines of $100,000 per day "should full compliance not be achieved or maintained."

---

[5]      Visa knew that the POS terminal changes it was requiring would result in Kroger having to pay additional "chargeback" fees on fraudulent purchases, but that did not stop Visa from demanding that Kroger make these changes.

7.      After Visa informed Kroger that the POS changes would bring Kroger into "compliance," Kroger started rolling out on an expedited basis system-wide the POS changes demanded by Visa.  Part way through this process, Visa changed its position again and informed Kroger that the POS terminal changes it was making were still not compliant with Visa's demands, and Kroger remained subject to fines and the threat of Visa cutting off Kroger's ability to accept Visa debit cards (something Visa called "limited acceptance").  In response, in a telephone call on June 17, 2016, Kroger's Senior Director, Enterprise Payments & Store Support asked Visa's Vice President, Head of Visa Rules Management,[6] *what more* did Kroger have to do to avoid these further fines and threats.  Visa responded that it would remove the fines and limited acceptance threat if, in addition to the POS changes that Kroger was rolling out, Kroger stopped using third party debit networks to process Visa signature debit transactions and used only Visa to process these transactions.  (These competing debit networks could offer to process Visa signature debit transactions for Kroger at lower prices than Visa.)  Kroger complied with this additional Visa demand, like the others, under duress.  On June 20, 2016, Kroger instructed Visa's acquirer, Vantiv,[7] to stop routing Visa signature debit transactions to third party debit networks.  On June 21, 2016, Vantiv confirmed to Kroger that it had stopped doing so.  This lawsuit follows.

8.      This Complaint includes the following claims: (i) Count I is a claim for declaratory relief from this Court providing that, under federal law, Visa cannot block Kroger's PIN verification requirement; (ii) Count II is a claim for declaratory relief from this Court providing

---

[6]      When referring to individuals in this Complaint, we identify them by company and title only.  The parties know the names of these people.

[7]      Vantiv is the Visa acquirer that Kroger uses to submit Visa debit card transactions for processing over Visa or other networks.  Based on Kroger's routing instructions, Vantiv sends transaction data electronically either to Visa or a third party debit network for processing and authorization, clearance, and settlement with Visa's issuing bank.

that under federal law, Visa cannot use its technical specifications for chip card acceptance or its Honor-All-Cards Rule to inhibit Kroger's choice in routing debit card transactions; (iii) Count III is claim for declaratory relief from this Court providing that under federal law, Visa cannot inhibit Kroger from using third party debit networks to process Visa signature debit transactions; (iv) Count IV is a claim under Ohio law for promissory estoppel to recover the damages that Kroger has incurred and will incur after reasonably relying on Visa's promises or representations in connection with Visa's approval of the configuration of Kroger's chip card terminals; and (v) Count V is a claim under Ohio law for negligent misrepresentation to recover the damages that Kroger has incurred and will incur after reasonably relying on Visa's representations regarding the configuration of Kroger's chip-enabled POS terminals.

## PARTIES

9.      Plaintiff The Kroger Co. ("Kroger") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Kroger owns and operates retail stores at which Visa debit cards and chip cards are accepted for goods and services.  Kroger uses Visa and, when available, other debit networks to process Visa debit card transactions.

10.     Defendant Visa Inc. ("Visa") is a Delaware corporation with its principal place of business in Foster City, California.  Visa is a global payments technology company that operates a network that connects banks, merchants, and cardholders in order to allow cardholders to purchase goods and services with Visa-branded payment cards.  As part of operating its payments network, Visa has promulgated a set of Operating Regulations that govern Kroger's and other merchants' acceptance of Visa debit cards, including the "Honor-All-Cards" Rule at issue in this lawsuit.

## JURISDICTION

11.     Counts I, II and III of this Complaint are declaratory judgment claims arising under 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction over Counts I, II

and III because Kroger and Visa are citizens of different States, and the matter upon which Kroger seeks a declaratory judgment from this Court involves more than $75,000 in controversy.  Moreover, Counts I, II and III involve the construction and application of a federal statute (15 U.S.C. § 1693o-2(b)(1)(B)) and the rules promulgated thereunder by the Federal Reserve Board (12 C.F.R. § 235.7).  As such, this Court has subject matter jurisdiction over Counts I, II and III pursuant to 28 U.S.C. § 1332(a)(1).

12.     Count IV this Complaint is a promissory estoppel claim under Ohio law.  This Court has subject matter jurisdiction over Count III because Kroger and Visa are citizens of different States, and the matter upon which Kroger seeks a declaratory judgment from this Court involves more than $75,000 in controversy.  As such, this Court has subject matter jurisdiction over Count IV pursuant to 28 U.S.C. § 1332(a)(1).

13.     Count V of this Complaint is a negligent misrepresentation claim under Ohio law. This Court has subject matter jurisdiction over Count V because Kroger and Visa are citizens of different States, and the matter upon which Kroger seeks a declaratory judgment from this Court involves more than $75,000 in controversy.  As such, this Court has subject matter jurisdiction over Count V pursuant to 28 U.S.C. § 1332(a)(1).

14.     Visa is subject to the personal jurisdiction of this Court for any one or more of the following reasons:

(a)     Visa transacts business in this State, and Kroger's cause of action arises from Visa's transacting business in this State;

(b)     Visa has caused tortious injury to Kroger by an act or omission in this State; and

(c)     Visa has caused tortious injury to Kroger in this State by an act or omission outside this State, and Visa regularly does business in this State, and derives substantial revenues from services rendered in this State.

15. The allegations and claims in this Complaint should be read in the alternative if necessary to avoid inconsistency.

## VENUE

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Kroger's claims occurred in this District.

## DEFINITIONS

17. The terms below have the following meanings as used in this Complaint:

(a) "Application identifiers" or "AIDs" are specifications that identify and correspond to a payment chip card and the parameters as to how the card transaction is processed.

(b) "Chip cards" are payment cards that have a microchip embedded in them instead of, or in addition to, a magnetic stripe on the back of the card.  The microchip is used to store cardholder and other information that is used in processing transactions involving the chip cards.

(c) "Debit cards" are payment cards that deduct money directly from a cardholder's checking account in order to obtain goods and services.  A debit card can be verified at the POS with a cardholder's signature or PIN.

(d) A "debit chip card" is a debit card that is also a chip card.

(e) The "Honor-All-Cards Rule" refers collectively to Rules 1.5.4.5 and 1.5.4.6 in Visa's October 15, 2016 Operating Regulations.  The Honor-All-Cards Rule requires a merchant to accept all Visa debit cards if the merchant accepts any Visa debit card.  For example, a merchant that accepts a Visa debit card issued by one Visa issuing bank (*e.g.*, Bank of America) must accept Visa debit cards issued by all other Visa issuing banks.  Rule 1.5.4.5.  Visa's Honor-All-Cards Rule likewise requires a merchant to "honor the Cardholder's request if

the Cardholder indicates that the transaction is to be processed as a Visa transaction."  Rule 1.5.4.6.

(f)     "Issuing banks" refer to those banks that issue debit cards to their customers.  In the U.S., the largest debit card issuing banks include Bank of America, Wells Fargo, and Chase.

(g)     "Merchants" are establishments, like Kroger, that accept debit cards as payment for goods or services.

(h)     Visa's "Operating Regulations" are a set of rules promulgated by Visa governing the operation of the Visa system that are updated periodically.  In this Complaint, the references to "Operating Regulations" and Visa's "Rules" refer to the edition of Visa's Operating Regulations dated October 16, 2015.

(i)     "PIN-less Routing" is the process by which a third party debit network with the capability to do so connects a Visa acquirer and a Visa issuer in authorizing, clearing and settling a Visa signature debit transaction.

(j)     A "PIN debit" transaction is a debit card transaction in which the cardholder must enter a four-digit PIN to complete the transaction.

(k)     "Point of Sale" or "POS" refers to the physical location where a cardholder presents his/her card for payment for goods or services and completes the transaction.

(l)     The terms "processing" and "processing services" refer to the collection of services that Visa and other payment card networks provide to merchants in transferring electronic payment transaction data involving debit cards from a merchant or its acquirer or processor to the issuer for the authorization, clearance and settlement of the transaction.

(m)     A "signature debit" transaction is a debit card transaction in which a PIN is not required to complete the transaction.  Instead of entering a PIN, the cardholder is usually only required to sign the sales receipt for the transaction.

(n)     A "third party debit network" is a debit network that does not have a branded debit card accepted by merchants nationwide, but does have the ability to process a Visa debit transaction for authorization, clearance and settlement by connecting a Visa acquirer and a Visa issuer and bypassing Visa.  Some third party debit networks can only process a PIN-verified Visa or MasterCard debit card transaction.  A few third party debit networks, including Pulse and Star, can now process both a PIN- and signature-verified Visa or MasterCard debit transaction.

## FACTUAL ALLEGATIONS

18.     As of 2015, there were hundreds of millions of Visa debit cards in the United States.  Visa debit cards can be used to purchase goods and services at approximately 8 million merchants, including Kroger.  Purchases involving Visa debit cards account for billions of dollars in sales at Kroger alone, and approximately $1.3 trillion in sales overall in the United States.

19.     For most Visa debit cards, a transaction at a retail merchant like Kroger may be completed in one of two ways: as a PIN debit transaction, or as a signature debit transaction. PIN debit transactions require the cardholder to enter a four-digit PIN to verify the transaction. A signature debit transaction does not require the cardholder to enter a PIN; the cardholder usually need only sign the sales receipt to complete the transaction.

A.     The Advantages of PIN Debit Over Signature Debit

20.     Verifying a Visa debit card transaction with a PIN has advantages over verifying it only with the cardholder's signature.  As explained below, the two principal advantages are that: (i) PIN debit transactions involve a lower fraud rate than signature debit transactions; and (ii) PIN debit transactions, unlike many signature debit transactions, give the merchant a competitive choice between routing the transaction over Visa or another debit network.

(i)     *PIN Debit Provides Better Fraud Prevention*

21.     Payment card fraud has been a significant problem in the United States. In fact, in 2015, 47% of the world's payment card fraud occurred in the U.S., even though the U.S. accounts only for 24% of total worldwide payment card volume.

22.     The entry of a PIN makes PIN debit transactions less susceptible to fraud than signature debit transactions. This is because fraudsters who attempt to use lost or stolen debit cards to purchase goods or services must also know the cardholder's PIN to complete the transaction as a PIN debit transaction. To complete the transaction as a signature debit transaction, the fraudster can simply forge the cardholder's signature on the sales receipt.

23.     The fraud protection benefits of PIN entry have been proved empirically. According to the Board of Governors of the Federal Reserve, fraud rates on PIN debit transactions are substantially lower than on signature debit transactions. A 2011 Federal Reserve report found that fraud losses as a percentage of overall volume were more than 700% higher on signature debit than on PIN debit.[8]

24.     The Federal Reserve Board's conclusions are consistent with Kroger's own experience that signature debit transactions involve a higher rate of fraud than PIN debit transactions. In Kroger's experience, the entry of a PIN eliminates fraud involving lost or stolen debit cards at Kroger's stores.

25.     Indeed, banks that issue Visa debit cards recognize the fraud protection benefits of PIN entry. Most, if not all, banks today require a PIN when a customer uses a debit card to access a bank's ATM. These banks require a PIN for using an ATM to reduce the risk of fraud.

---

[8]     *See* 2011 Interchange Fee Revenue, Covered Issuer Costs, and Covered Issuer and Merchant Fraud Losses Related to Debit Card Transactions at 25 (Mar. 5, 2013) ("Fraud incidence was higher among signature and prepaid transactions than among PIN transactions. The percentage of signature transactions that were fraudulent was more than seven times that of PIN transactions in 2011."), http://www.ct.gov/ag/lib/ag/press_releases/2015/20151116?chipandpinmultistateletter.pdf.

26.     Visa itself has long been aware that entering a PIN for verification of the card makes a debit card transaction safer than signature verification.  In a document prepared for a Visa Debit Advisors Meeting in <u>1990</u>, Visa recognized that PIN debit was the "[s]afest product for banks, [with] less fraud" and the "[s]afest product for consumers."

27.     Kroger has a substantial interest in protecting its customers from debit card fraud.  In some instances, Visa and other payment card networks impose "chargeback" costs on Kroger and other merchants for fraudulent transactions that occur at their stores.

28.     Kroger's interest in protecting its customers from debit card fraud goes beyond avoiding chargeback costs.  Debit card fraud damages Kroger's efforts to cultivate a reputation as a business where customers can shop securely, knowing that their personal data is protected.  In addition, while customers themselves may not ultimately be liable for unauthorized transactions involving their debit cards, the process that these customers must go through to recover lost amounts from their bank is inconvenient and time-consuming.  Some customers may blame Kroger for fraud that occurs at Kroger stores and for the hassle of undoing the fraudulent transaction, even if Kroger is not responsible.

(ii)     *Merchants Can Choose Among Multiple Networks for Processing PIN Debit Transactions on Visa Debit Cards*

29.     Most, if not all, Visa-branded debit cards are enabled to allow the cardholder to complete a transaction with or without entering a PIN.

30.     PIN debit transactions involving Visa-branded debit cards may be processed over a Visa network in two ways:

(a)     First, some Visa-branded debit cards are enabled to function with "Interlink," which is Visa's PIN debit network.

(b)     Second, even if a Visa-branded debit card is not enabled to function with Interlink, the PIN debit transaction can still be processed over a Visa network.  Through Visa's

PIN-Authenticated Visa Debit ("PAVD," pronounced "paved") program, Visa allows merchants to process PIN debit transactions involving Visa-branded debit cards over Visa's network for signature debit transactions ("VisaNet") if the transaction cannot be processed over Interlink.

31.     In addition, PIN debit transactions involving Visa-branded debit cards can be processed by one or more third party debit networks.

32.     Whether a Visa debit card transaction can be processed over a particular third party debit network depends on whether the issuing bank has enabled the debit card to function with that third party debit network.  For example, a Visa-branded debit card may be enabled to function on the Star network, but not on other third party debit networks.  In this example, a PIN debit transaction involving that Visa debit card may be processed over Star or Visa (via Interlink or VisaNet), but not over other debit networks.

33.     Where it exists, the ability for a merchant to route Visa debit card transactions among different debit card networks for processing creates an incentive for Visa and other debit card networks to compete with each other by offering the merchant lower prices in order to win a greater share of the merchant's debit card transaction volume.  The diagram below illustrates how a merchant can choose to process the transaction using Visa, or bypass Visa's network and use another debit network instead:



34.     In order to generate competition among debit card networks, Kroger tries to route debit card transactions for processing to the debit card network that offers Kroger the lowest price to process the transaction.

35.    Merchants did not always have a choice among debit networks for routing PIN debit transactions for processing.  Before 2010, Visa used exclusivity arrangements with debit card issuing banks to reduce competition between itself and other debit card networks.  Under these exclusivity agreements, Visa issuing banks would issue Visa debit cards that could only function when processed over a Visa network.  Consequently, a substantial number of Visa debit cards issued before 2010 would only allow PIN debit transactions to be processed over Visa's Interlink network.

36.    In 2010, however, Congress enacted legislation to prohibit exclusivity arrangements with respect to debit cards.  This legislation was part of the Durbin Amendment. Specifically, the Durbin Amendment directed the Board of Governors of the Federal Reserve to implement regulations prohibiting payment card networks and issuing banks from entering into the type of exclusivity arrangements that Visa and issuing banks had entered into prior to 2010. 15 U.S.C. § 1693o-2(b)(1)(A).  The Federal Reserve Board followed Congress' direction and has promulgated regulations prohibiting exclusivity arrangements for debit cards.  *See* 12 C.F.R. § 235.7(a).

37.    As a result of the Durbin Amendment and the Federal Reserve Board's subsequent regulations, all Visa debit cards had to be enabled to function with at least one debit card network besides a network operated by Visa.

38.    Most, if not all, issuing banks for Visa debit cards responded to the Durbin Amendment and the Federal Reserve Board's subsequent regulations by enabling their debit cards to function with third party debit networks that, at the time, could only process PIN debit transactions.

39.    Consequently, for PIN debit transactions on Visa debit cards, the Durbin Amendment has resulted in Kroger having a choice between Visa and at least one other debit card network unaffiliated with Visa in routing the transaction for processing.  Kroger can route

the transaction for processing over Visa's Interlink network (or VisaNet, if the debit card is not enabled for processing over Interlink), or Kroger can route the transaction over the third party PIN debit network or networks for which the card is enabled. That choice would allow Kroger to route PIN debit transactions on Visa debit cards to Visa or a lower-priced PIN debit network; however, Visa's conduct alleged in this Complaint inhibits the ability of Kroger and other merchants to make that choice and violates federal law.

(iii) <em><u>Merchants Often Cannot Choose Among Multiple Debit Networks for Processing Signature Debit Transactions on Visa Debit Cards</u></em>

40. After the enactment of the Durbin Amendment and the Federal Reserve Board's regulations, merchants, including Kroger, still had no choice in routing signature debit transactions on Visa debit cards. Because Visa issuing banks only issued Visa debit cards that were enabled to function with Visa's VisaNet network for processing signature debit transactions, merchants had no ability to route signature debit transactions on Visa debit cards to third party debit networks.

41. As Visa remained the merchants' only option for processing signature debit transactions on Visa debit cards, Visa was insulated from price competition with respect to signature debit transactions. As a result, Visa has been able to charge Kroger and other merchants high prices to process Visa signature debit transactions. In fact, Visa charges Kroger a higher price to process a signature debit transaction over VisaNet than it does a PIN debit transaction over VisaNet (through the PAVD function), even though either transaction would be processed over the same network.

42. In 2014, some third party debit networks that previously could only process PIN debit transactions began to offer Kroger and other retailers network processing services for signature debit transactions as well. These third party debit networks referred to their processing of signature debit transactions as "PIN-less Routing."

43.     If adopted by issuing banks, PIN-less Routing presented an opportunity for merchant choice in routing similar to what exists for PIN debit.  If a Visa debit card were enabled to function with a third party debit network that offered PIN-less Routing, then the merchant could choose between routing a Visa signature debit transaction to Visa or the third party debit network that offering PIN-less Routing.

44.     PIN-less Routing is a threat to Visa's market share in processing debit card transactions.  If PIN-less Routing became widely adopted, then Visa would face competition from non-Visa debit networks for processing signature debit transactions that was similar to what it already faced for processing PIN debit transactions.

45.     Kroger and other merchants have adopted PIN-less Routing where it is available in order to reduce their debit card processing costs by introducing competition from other debit networks.  However, today, PIN-less Routing is still not available to merchants for the majority of Visa signature debit transactions.  Many issuing banks, including some of the largest issuers of Visa debit cards in the U.S., currently do not accept Visa signature debit transactions that have been processed over a third party debit network.  Other issuing banks only accept Visa signature debit transactions under a certain dollar limit, for example, $50, if they have been processed over a third party debit network.

46.     Consequently, even with the introduction of PIN-less Routing, whether Kroger has a choice among multiple debit networks for routing a Visa debit card transaction still depends in large part on whether the cardholder enters a PIN.  If the cardholder enters a PIN, then Kroger will have a choice of routing the transaction to a Visa network or another, lower-cost, debit network.  If the cardholder does not enter a PIN, then Kroger often will have no choice but to route the transaction to Visa for processing, and pay a higher price to do so.  For the majority of Visa debit card transactions, the entry of a PIN therefore determines whether Kroger will be able to choose between Visa and other debit networks to process the transaction.

(iv)     *Visa Has Taken Steps to Inhibit the Adoption of PIN-less Routing*

47.     Visa has taken steps to inhibit PIN-less Routing by Kroger and other merchants.

48.     For example, even after Kroger capitulated to Visa's POS terminal demands that inhibited Kroger's routing rights, Visa only backed off from imposing further fines on Kroger and threatening to cut off Kroger's ability to accept Visa debit cards after dictating to Kroger that it stop using PIN-less Routing.

49.     Specifically, on June 17, 2016, in a telephone call with Kroger's Senior Director, Enterprise Payments & Store Support, Visa's Vice President, Head of Visa Rules Management, told Kroger that Visa would stop fining Kroger and remove the limited acceptance threat only if Kroger allowed for signature verification on Visa debit chip card transactions, reconfigured its terminals, <u>and</u> if Kroger stopped using PIN-less routing for any signature debit transactions involving Visa debit cards.  Based on Visa's statements, Kroger has discontinued its use of PIN-less Routing, even though Kroger believes that its use of PIN-less Routing, when available, is protected by federal law and can offer Kroger a lower-cost option for routing Visa signature debit transactions.  *See also supra* ¶ 7.

50.     Tellingly, Visa's acquirer, Vantiv, recognizes that Kroger's right to use PIN-less Routing is protected by federal law.  In a May 10, 2016 letter to Visa's Vice President, Visa Rules Management, the Head of Merchant Risk & Payments Compliance at Vantiv, in responding to Visa letters charging Kroger with "non-compliance" with Visa's Rules, stated that the "routing of Visa Signature Debit transactions over an alternative network is consistent with Durbin provisions and is not in violation of Visa's rules."

51.     Another example of Visa actions to inhibit PIN-less Routing is provided by Visa's announcement of a penalty that it would impose on Visa issuing banks that experienced a sustained material decline in Visa debit card volume.  This would occur if Visa issuing banks accepted Visa signature debit transactions via PIN-less Routing.  Visa announced this penalty on

April 28, 2016 and called it a Delayed De-Conversion Assessment ("DDCA"). Visa's apparent purpose of this new fee was to suppress the adoption of PIN-less Routing technology, because it allows third party debit networks to become a greater competitive threat to Visa.

52.     The DDCA fee was equal to 5 basis points (0.05%) of an issuing bank's total Visa credit and debit transaction volume, which could have a significant financial impact on an issuing bank's decision-making regarding its acceptance of PIN-less Routing for Visa signature debit transactions.

53.     In early June 2016, Visa announced that it was not going to proceed with the DDCA after United States Senator Richard Durbin wrote to Visa questioning whether the DDCA was anticompetitive. (This is the same Senator Durbin after whom the "Durbin Amendment" is named). Despite Visa's withdrawal of this penalty, the DDCA is a stark reminder to Visa issuers that Visa intends to and can punish them if they facilitate the PIN-less Routing of Visa signature debit transactions by third party debit networks.

B.     The Migration to Chip Cards and PIN

54.     Until relatively recently, all or nearly all payment cards in the United States used magnetic stripe technology. For those cards, a magnetic stripe on the back of a plastic card stores cardholder account information for use in processing credit card and debit card transactions. To complete a magnetic stripe payment card transaction at a retail merchant like Kroger, a cardholder can swipe the plastic card on a POS terminal.

55.     Chip cards contain a microchip that is a more advanced form of data storage than a magnetic stripe. Magnetic stripes are static in that they only contain the information with which they are initially coded. Chip cards, on the other hand, are dynamic in that the data stored on the microchip can be updated. Chip cards also create a unique electronic signature cryptogram for each transaction. Because chip cards involve different technology than

magnetic stripe cards, POS terminals that were designed to accept magnetic stripe cards cannot accept chip card transactions.

56.     While payment networks, merchants and cardholders in the United States have historically relied on magnetic stripe payment cards and POS terminals that accommodated them, in Europe and elsewhere outside the U.S., chip cards are the norm.  Visa and other payment card networks have imported chip technology into the United States, and mandated that U.S. merchants install chip-compliant POS terminals by October 1, 2015.  Thus, in order to accept chip cards, merchants (including Kroger) had to replace their POS terminals, and reconfigure their POS systems, at significant expense.

57.     Visa has promoted the use of chip cards as a way to reduce payment card fraud.  For example, according to Visa's website, the unique electronic signature that chip cards generate is "a feature that is virtually impossible to replicate in counterfeit cards."[9]

58.     Chip card technology is not a failsafe against payment card fraud.  Visa knows this.  While chip card technology may reduce counterfeit payment card fraud, it does not necessarily reduce the amount of fraud due to the use of lost or stolen payment cards.  Moreover, fraudsters have detected ways to "beat" the chip.  A PIN, however, is encrypted in the transaction from the start and makes the transaction more secure than the chip alone.  As a result, even with chip cards, the entry of a PIN is still a very important method of preventing payment card fraud.  Again, Visa knows this.

59.     Visa recognizes the importance of PIN entry in other countries as an additional protection against fraud on chip cards.  For example, in the United Kingdom, PIN verification is

---

[9]     Visa, "Introducing Visa Chip Technology - Confidence in a Smarter World," https://www.visa.com/chip/merchants/grow-your-business/payment-technologies/credit-card-chip/index.jsp.

often required when using a Visa chip card. Visa has attributed the significant decline in fraud due to lost or stolen payment cards in the U.K. to the usage of PIN verification.[10]

60. Similarly, Visa has expressly recognized the effectiveness of PIN verification in reducing fraud on chip cards in Canada. Visa Canada's website explained:

> **Benefits of Chip & PIN**
>
> ...
>
> **Added peace of mind.**
>
> Chip cards and Chip terminals help make a secure transaction system even more secure by validating the cardholder's Chip & PIN. This enhances the security of your card whenever you use it in a face-to-face transaction. ...
>
> **Increased security against unauthorized use [of] your card.**
>
> You insert your Visa card in a chip terminal and enter your PIN when prompted. Once your PIN is confirmed and the purchase is approved, you'll be prompted to remove your card from the terminal. You do not hand your Visa card to anyone, or lose sight of it at any time. This helps to prevent fraudulent use of your card increased security against unauthorized use [of] your card.[11]

61. Visa also represented to Australia's Competition and Consumer Commission that requiring a PIN is an effective method to reduce fraud:

> Section 3.4 **Combatting fraud**
> One of the ways of combating card fraud at POS is to require the person presenting the card to verify that they are the true cardholder. ...

---

[10] _See_ Submission to the Australian Competition and Consumer Commission in support of the Application for Authorization by Visa Worldwide Pte Limited, Visa AP (Australia) Pty Ltd, and MasterCard Asia/Pacific Pte Ltd at 6 (July 4, 2013), http://registers. accc.gov.au/content/index.phtml?itemID=1120516&display+application. _See also_ www. visaeurope.com/newsroom/faqs (accessed June 6, 2016) ("The biggest single factor in reducing fraud has been the introduction of EMV chip and PIN. Since it was introduced in the UK, high street fraud (known as face-to-face fraud) has more than halved. Fraud on lost or stolen cards in particular has fallen dramatically as they become useless for fraudsters who do not possess the correct PIN.")

[11] _See_ www.visa.ca/chip/cardholders/benefitsofchippin/index.jsp.

> In 2008 the use of PIN, as an alternative and optional CVM [Cardholder Verification Method], was introduced in Australia by Visa ...
>
> ... [R]equiring the use of PIN removes the option of verification by signature; a less robust CVM. It is much more difficult for a fraud perpetrator to ascertain a PIN than to forge a signature. Accordingly, one of the most effective ways of combating fraud ... is to make the use of PIN for customer verification compulsory.[12]

62.     Visa also told Australia's Competition and Consumer Commission that any delay in adopting mandatory PIN entry "will prolong the period in which fraud perpetrators can take advantage of signature as opposed to PIN as a means of verifying a card."[13]

63.     Visa previously informed merchants in New Zealand that it was "replacing signature with PIN [there] to strengthen payment security. ... The move to PIN is aimed at reducing lost and stolen card fraud."[14]

64.     Nevertheless, to date, most, if not all, Visa debit chip cards issued in the U.S. allow for a transaction to be completed with or without the entry of a PIN.

C.     Visa Approved Kroger's Chip-Enabled POS Terminal Specifications Before Kroger's Roll-Out

65.     Visa promoted chip technology to merchants as making card transactions more secure at the POS. The Durbin Amendment and Federal Reserve Board regulations prohibited Visa (and other payment card networks) from inhibiting merchants' routing of debit transactions

---

[12]     Submission to the Australian Competition and Consumer Commission in support of the Application for Authorisation by Visa Worldwide Pte Limited, Visa AP (Australia) Pty Ltd, and MasterCard Asia/Pacific Pte Ltd at 6 (July 4, 2013), http://registers.accc.gov.au/content/index.phtml?itemID=1120516&display+application.

[13]     *Id.* at 18.

[14]     http://www.visa.co.nz/personal/security/PINatPointofsale. shtml. *See also* http://www.visa.co.nz/personal/security/chipcards.shtml. ("Chip cards, when used in conjunction with a personal identification number (PIN), are a solution to counterfeit and lost and stolen card fraud. The chip prevents the card from being counterfeited and the PIN uniquely identifies the owner of the card and prevents it from being used by someone else if lost or stolen.").

22

among debit networks. *See infra* ¶¶ 83-84. Kroger had both of these issues in mind in the configuration of its POS terminals. Given the challenge to Kroger presented by the scale of its chip terminal rollout, Kroger spoke directly to Visa about the design and configuration of the software specifications to be used in Kroger's chip-enabled terminals to make sure that Kroger would comply with Visa's specifications and Rules. Kroger also communicated with Visa's acquirer, Vantiv, on this subject.

66.     On or about February 11, 2015, Kroger's Senior Director, Enterprise Payments & Store Support, had a telephone conversation with three people from Visa (though others from Visa may also have been on the line). One of these people was in Visa's Chip Products U.S.A. department. He previously held the title at Visa of Senior Business Leader, Chip Infrastructure Management. This person had been the main spokesperson to Kroger since about May 2012 regarding the implementation of chip specifications and the specifics, and he did the talking for Visa described in paragraphs 67 and 68, *infra*. Also on the call for Visa was its Vice President, Merchant Sales and Solutions. This person is Kroger's immediate contact for Visa acceptance and any issue arising from acceptance of Visa payment cards. Another person on the call for Visa was its Head of Global Payment Security Strategy. He is responsible for managing day-to-day activities of Visa's migration to the new chip specifications in the U.S., and recently led overall strategy, negotiations and execution of common debit agreements with all 13 US PIN debit networks.

67.     On this February 11, 2015 telephone call, Kroger talked to Visa about Kroger's implementation of chip technology and PIN bypass in the POS terminals that Kroger was buying and having programmed to accept chip cards. On this call, Kroger asked: (i) whether Kroger could have the software and specifications for Kroger's POS terminals configured for PIN; (ii) whether Visa required the software specifications in the chip-enabled POS terminals that Kroger

was buying to be programmed to provide for PIN bypass[15] in accepting Visa chip cards; and (iii) whether Visa would prohibit the software specifications in Kroger's new chip-enabled POS terminals from requiring PIN verification. Kroger told those from Visa on this telephone call that the software specifications in Kroger's new chip-enabled POS terminals would be programmed so that the terminals looked for a PIN on every chip card, and if a PIN was present on the card, then Kroger would require it for verification by the cardholder. Kroger also told Visa on this call that Kroger's chip terminals would be designed to use the US Common AID.

68.     In response, Visa said to Kroger that there are Visa "signature preferring cards,"[16] and that Visa did not require PIN bypass in Kroger's POS terminal software specifications or display prompts. Visa said this to Kroger knowing that Kroger would require PIN verification by the cardholder at the POS terminal, and that Kroger would use the US Debit AID on its new chip-enabled terminals. Visa said to Kroger that Visa thought PIN bypass should be used for the customer experience, but Visa did not require PIN bypass under Visa's Rules and Visa would not prohibit PIN verification in Kroger's chip-enabled POS terminals.

69.     Kroger reasonably relied on the statements made by Visa during their February 11, 2015 telephone conversation because, as described in paragraph 66, *supra*, Visa's employees participating in the call held positions at Visa that conveyed responsibility for the subjects that they were discussing on the call.

70.     Under the circumstances present, if any of Visa's statements to Kroger on this call were incorrect or unclear, then those from Visa on this call should have said so at the time, because each of them knew or should reasonably have known that Kroger was relying on the

---

[15]     "PIN bypass" means that Visa cardholders could "bypass" inserting their PINs for verification and use signatures instead.

[16]     This refers to debit chip cards that were programmed to use the Visa AID if available on the merchant's terminal.

information Visa provided to Kroger on this call in having the software specifications in Kroger's new chip-enabled POS terminals programmed. In fact, in reliance on Visa's statements to Kroger as described above, Kroger moved forward in having the software specifications in its new chip-enabled POS terminals programmed to require PIN verification by the cardholder.

71.     Based on this February 11, 2015 telephone conversation with Visa, Kroger had the understanding from Visa that while Visa would prefer that Kroger use PIN bypass in the chip-enabled POS terminals that Kroger was buying and having programmed, Visa would allow Kroger to program its new chip-enabled POS terminals to require PIN verification by the cardholder.

72.     During this period in 2015, Kroger was not the only merchant concerned about whether Visa's (and the other branded debit card network, MasterCard) would use chip technology to inhibit their routing rights in violation of the Durbin Amendment and Federal Reserve Board's regulations. The Merchant Advisory Group ("MAG"), whose members included Kroger and more than 100 other of the nation's largest merchants, expressed this concern on behalf of its members (including Kroger) in a letter dated March 25, 2015 from MAG's CEO to the CEOs of Visa and MasterCard. The letter states that "[t]he members of ... [MAG] have longstanding concerns about the technology occurring within the payments industry including the effectiveness of new technology given the way your companies envision implementing them, the delays in having the technical specifications necessary to make these transitions, and the regulatory deficiencies in the way these technologies are being rolled out." The letter expressed concerns that the claimed anti-fraud benefits of chip would not be realized without PIN verification, and merchant routing choices protected by federal law would be compromised with the branded payment card networks' preferred configuration for merchants' POS chip terminals. The letter urged Visa and MasterCard to "ensure that routing is not inhibited and the regulations are followed before enforcing penalties on those who are interested in conducting

transactions that are consistent with the law."  The letter concluded that "[m]erchants are frustrated by the inadequate security of signature authentication, the delays in the necessary specifications for routing debit transactions and the violations of Federal Reserve regulations on debit routing choice. ...  [W]e would like to hear how you and your issuers plan to bring these different situations into compliance with federal rules."

73.    In April 2015, Visa's Executive Vice President, Corporate Strategy (and the former President of Visa U.S.A., Inc.), writing on Visa's behalf, responded to the MAG CEO's letter, stating in part that as part of Visa's migration to chip cards and chip terminals, Visa was "providing merchants with a separate choice of whether or not to accept PIN for debit transactions."  Visa's Executive Vice President wrote further: "The U.S. approach to chip implementation allows merchants to adopt technology solutions in their own timeframe and in a manner that best fits their business needs; it is not a mandate.  This is an important distinction. Under the current liability shift framework, businesses can evaluate their unique needs and risks and develop implementation plans that work for them."  Visa's Executive Vice President also wrote that "merchants that want to enable multiple routing options at the point-of-sale can deploy a terminal that is capable of supporting the Common Debit solution, just like merchants that want to accept PIN transactions generally can invest in terminals that can securely accept a PIN.  Once the merchant enables these capabilities, merchants are free to direct cardholders to authenticate[17] the transaction in a manner that enables routing to any network that has developed the capability of processing these transactions; there are no Visa network rules that 'stand in the way' of merchant routing pursuant to [the Federal Reserve regulations]." (Emphasis added.)

_____

[17]    In this letter, the term "authentication" refers to verification of the card at the merchants' POS, *e.g.*, PIN or signature.

74.     At all times relevant to the allegations in this Complaint, Kroger has been a member of MAG, Visa has known that Kroger is a MAG member, and Visa has known or reasonably expected that MAG distributed to its members (including Kroger) the MAG CEO's March 23, 2015 letter and the Visa Executive Vice President's April 2015 letter.  In fact, MAG sent a copy of its CEO's March 23, 2015 letter, and Visa's Executive Vice President's April 2015 letter, to Kroger's Senior Director, Enterprise Payments & Store Support shortly after the date of each letter, and Kroger read and relied on each letter at or about the time it was received.

75.     Visa knew or reasonably should have known that MAG members, including Kroger, would receive, read and rely on Visa's Executive Vice President's April 2015 letter in response to the March 25, 2015 letter from MAG's CEO in terms of, among other points, required PIN verification at the POS and routing because, among other reasons: (i) the MAG CEO's March 23, 2015 letter was written by him, expressly on behalf of MAG's members, including Kroger, to Visa; (ii) Visa's Executive Vice President, on Visa's behalf, replied to the MAG CEO's letter in the MAG CEO's capacity on behalf of MAG; (iii) Visa's Executive Vice President's letter addressed the POS terminal specifications, chip terminal compliance and routing consequences; (iv) Visa's Executive Vice President was among Visa's most senior executives and had spoken and acted for Visa in dealing with merchants (including Kroger) in the past; and (v) Visa's Executive Vice President, writing on Visa's behalf, knew or reasonably should have known that the April 2015 letter to MAG's CEO would be shared with and relied on by MAG members (including Kroger).  In fact, as noted above, Kroger received and read Visa's Executive Vice President's April 2015 letter, and Kroger relied on it as further confirmation of what Visa had told Kroger on their February 11, 2015 call, *i.e.*, (i) Visa would not require Kroger to implement PIN bypass, (ii) Visa would not prohibit Kroger from requiring PIN verification, and (iii) Visa's Rules did not (in the words of Visa's Executive Vice President) "stand in the way" of

Kroger requiring PIN verification and routing Visa signature debit transactions to third party debit networks.

76.     On May 15, 2015, Visa published the Transaction Acceptance Device Guide ("TADG"), which included technical specifications for merchants such as Kroger that accepted Visa-branded debit chip cards.  The TADG states that its intended audience includes "merchants creating requirements for transaction acceptance devices [*i.e.*, POS chip terminals]."  The TADG explains that while merchants could configure their chip terminals with both an AID that used Visa for routing Visa debit transactions (the "Visa AID") and another AID that presented multiple routing options (the "US Common Debit AID"), a merchant could choose to eliminate the Visa AID and use the US Common Debit AID instead.  The TADG termed this the "Other Approach" to configuring the terminal specifications.[18]

77.     Kroger, as the company deploying the new chip terminals, reasonably relied on the TADG's "Other Approach" in configuring its terminals not to display or use the Visa AID and to eliminate it, and to use the US Common Debit AID for routing Visa debit transactions instead. Visa knew, or reasonably should have known, that Kroger and other merchants would read and rely on the TADG in having their software configured to comply with Visa's specifications and Rules.  Indeed, this is why Visa published the TADG.

78.     In reliance on Visa's statements and published documents described above, later in 2015, after Kroger had developed the software code to require PIN verification and an AID

---

[18]     This "Other Approach," as the TADG terms it in Section F.3.2, states that a merchant could have "the terminal[] identify cards that contain the Visa AID and the US Debit AID <u>and eliminate one of the AIDs</u>" as an option and "[t]he remaining AID can then be used for routing purposes."  (Emphasis added.)  This alternative specification was consistent with Visa's U.S. Acquirer Implementation Guide dated June 2013, which expressly provided that "merchants that prefer to determine the network to which a transaction is routed will need to deploy specific logic in their terminals to ensure that the AID corresponding to their preferred network is selected...."  In other words, Visa's Guide for its acquirers provided for the merchant to choose the AID to be displayed.

that allowed for merchant choice in routing, Kroger had this software code loaded into some of its new chip-enabled POS terminals and sent for testing for compliance with Visa's requirements. Kroger sent data from these chip terminals to a service provider named ICC Solutions, which worked for Visa's acquirer, Vantiv. On September 17, 2015, ICC Solutions reported in writing to Vantiv and Kroger that Kroger had received "APPROVAL" and "PASSED Certification" for Visa, MasterCard, American Express, and Discover. (Visa is the only branded payment card network that now takes issue with Kroger's new chip-enabled POS terminal specifications and demands that Kroger reprogram them.)

D.     <u>Visa Blocks Kroger's Effort to Require a PIN for Debit Chip Cards and Inhibits Kroger's Routing Options</u>

79.     After Visa approved the specifications that Kroger was going to use in its new chip-enabled POS terminals, Kroger started rolling out these terminals in October 2015. During this period, Kroger tested its new terminals in certain cities to assess whether, in fact, the requirement that cardholders enter their PINs instead of signing to verify that the card is theirs (the "PIN Requirement") would reduce debit card fraud, and whether the corresponding routing options would reduce Kroger's processing costs. The test was successful in reducing Kroger's debit card fraud and reducing Kroger's costs for accepting Visa debit chip cards. This is because the PIN Requirement caused all Visa debit chip card transactions to be PIN debit transactions – thus giving Kroger a choice in routing that promoted price competition between Visa and at least one other PIN debit network – instead of signature debit, for which Visa faces reduced, if any, price competition.

80.     In a letter dated February 5, 2016 addressed to Kroger's acquirer, Vantiv,[19] Visa took the position that Kroger's POS practices regarding Visa debit cards violated Visa's "Honor-

---

[19]     Kroger and Visa have met, talked and otherwise communicated directly with each other numerous times regarding Kroger's POS routing practices and Visa's punishments

All-Cards" Rule because Kroger supposedly was "not allowing [Visa] cardholders to select a Visa transaction."

81.     Visa's position was that the Honor-All-Cards Rule required Kroger to accept a signature to complete a Visa debit chip card transaction, even if the card was PIN-enabled, if the cardholder did not want to enter the PIN.  Visa's Honor-All-Cards Rule, however, does not discuss the cardholder's entry of a PIN, or providing a signature, to verify a Visa debit card transaction.

82.     Visa's interpretation of its Honor-All-Cards Rule with respect to Kroger's PIN Requirement contradicts Visa's Executive Vice President's April 2015 letter to MAG.  *See supra* paragraph 73 ("merchants are free to direct cardholders to authenticate the transaction in a manner that enables routing to any network that has developed the capability of processing those transactions.  There are no Visa network rules that 'stand in the way' of merchant routing.").

83.     Visa's interpretation of its Honor-All-Cards Rule also conflicts with the Durbin Amendment and regulations promulgated by the Federal Reserve Board to implement the Durbin Amendment.

(a)     The Durbin Amendment provides that "an issuer or payment network shall not, directly or through any agent or processor, or licensed member of the network, by contract, requirement, condition, penalty, or otherwise, inhibit the ability of any person who accepts debit cards for payments to direct the routing of electronic debit transactions for processing over any payment card network that may process such transactions."  15 U.S.C. § 1693o-2(b)(1)(B).

---

described in this Complaint.  For appearances, however, Visa addressed letters like the March 17, 2016 correspondence to Vantiv, with a copy to Kroger.  This practice highlights how Visa elevates form over substance.

(b)     In response to the Durbin Amendment, the Federal Reserve Board proposed a rule stating that "an issuer or payment card network is prohibited from inhibiting a merchant's ability to route a direct [debit] transaction over any of the payment card networks that the issuer has enabled to process an electronic transaction for that particular card." 75 Fed. Reg. 81,722-01 to -25.   As an example of conduct that would be prohibited under the proposed rule, the Federal Reserve Board cited conduct in which the network or issuer "prohibit[ed] a merchant from encouraging or discouraging a cardholder's use of a particular method of debit authorization, such as rules prohibiting merchants from favoring a cardholder's use of PIN debit over signature debit or discouraging the cardholder's use of signature debit. *Id.* at 81,763.  The Federal Reserve Board explained that this example was intended to address "issuer or card network rules ... that prohibit a merchant from steering ... a cardholder's use of a particular method of debit authorization" because "merchants may want to encourage cardholders to authorize a debit transaction by entering their PIN, rather than by providing a signature." *Id.* at 81,752.  The Federal Reserve Board further stated that under the proposed rule, "merchants may not be inhibited from encouraging the use of PIN debit by, for example, setting PIN debit as a default payment method or blocking the use of signature debit altogether." *Id.* at 81,763 (emphasis added).  Visa opposed this proposed Rule and the Federal Reserve Board's explanatory interpretation because "under the proposed example, merchants would be permitted to block a consumer's choice of signature debit." 76 Fed. Reg. 43,394-01, 43,453. The  Federal  Reserve  Board  rejected  Visa's  objection  and  ordered  that  the rule/explanatory interpretation "was adopted as proposed." *Id.*

(c)     The final rule adopted by the Federal Reserve states that "an issuer or payment card network shall not, directly or through any agent, processor, or licensed member of the network, by contract, requirement, condition, penalty, or otherwise, inhibit the ability of any person that accepts or honors debit cards for payments to direct the routing of electronic

debit transactions for processing over any payment card network that may process such transactions." 12 C.F.R. Sect. 235.7(b). The Federal Reserve Board explained that under this Rule, "merchants, not issuers or networks, will be able to direct the routing of [debit] transactions." 76 Fed. Reg. 43,452. The Federal Reserve Board stated in its Official Commentary to the Rule that a "payment card network is prohibited from inhibiting a merchant's ability to route or direct an electronic debit transaction over any of the payment card networks that the issuer has enabled to process an electronic debit transaction for that particular debit card."

(d)     The Federal Reserve Board reaffirmed its analysis of 12 C.F.R. § 235.7(b) even after a "payment card network and a few issuers opposed the Board's statement ... that, under the proposed example, merchants would be permitted to block a consumer's choice of signature debit." 76 Fed. Reg. 43394, 43453 (Jul. 20, 2011).

84.     The Durbin Amendment and the corresponding Federal Reserve Board regulations apply to debit chip cards as well as magnetic stripe debit cards.

85.     The application of Visa's Honor-All-Cards Rule to require Kroger to accept a signature to verify a debit chip card transaction inhibits Kroger's ability to direct the routing of debit card transactions over different debit networks. This is because, in many instances, whether Kroger has any ability at all to route a debit card transaction over different debit networks depends entirely on whether the cardholder enters a PIN to complete the transaction.

86.     By forcing Kroger to verify a debit chip card transaction without the cardholder entering a PIN, Visa is, in many instances, completely depriving Kroger of the right to choose among multiple debit networks to route the transaction for processing. For those signature debit transactions on Visa debit chip cards that are not eligible for PIN-less routing (which is the majority of signature debit transactions), Visa has reduced Kroger's routing options from two or more debit networks to only one.

87.     Accordingly, the Federal Reserve Board has already rejected Visa's position that Visa can use its Honor-All-Cards Rule to force Kroger to accept signature debit transactions on Visa chip cards.  As noted earlier, in its analysis of 12 C.F.R. § 235.7(b) before its enactment, the Federal Reserve Board made clear that "[u]nder proposed § 235.7(b) and comment 7(b)-2.i, merchants may not be inhibited from encouraging the use of PIN debit by, for example, setting PIN debit as a default payment method or blocking the use of signature debit altogether."  75 Fed. Reg. 81722, 81752 (Dec. 28, 2010) (emphasis added).

E.     Visa Uses Its Technical Specifications for Chip Card Acceptance to Further Limit Kroger's Routing Choices

88.     As alleged above, *supra* paragraphs 76-77, the TADG provides that POS terminals accepting Visa debit chip cards should be equipped to function with an AID for Visa and a generic "US Common Debit"[20] AID.  Most, if not all, Visa debit chip cards are programmed with both the Visa AID and the US Common Debit AID.  If the Visa AID is used in the transaction, then the merchant *must* route the transaction to Visa for processing, *i.e.*, the merchant would have no choice but to route the transaction to Visa.  If the generic US Common Debit AID is used, then the merchant may route the transaction to Visa or a third party debit network for processing.

89.     Visa's TADG also includes a specification that all POS terminals for chip cards include a screen that allows a customer to choose between the Visa AID and the US Common Debit AID.  An example of such a screen is below:[21]

---

[20]     The generic US Common Debit AID is also known as the "Common Debit" or "US Debit" AID.

[21]     This is not a Kroger chip terminal screen, but that of another merchant.  But this screen illustrates what Visa wants U.S. merchants to display to Visa cardholders.



90.     To the extent that Visa requires that a merchant's POS chip terminal screen ask the customer choose between the Visa AID and the US Common Debit AID, the Visa specifications create a real and present risk of customer confusion.  Kroger believes that most of its customers are unaware of the difference between "Visa Debit" and "US Debit," and most of Kroger's customers are unaware of the significance of choosing one or the other.

91.     Visa's technical specification that only a Visa network can process a transaction after a customer selects the Visa AID violates the Federal Reserve Board's regulations pursuant to the Durbin Amendment.  *See supra* ¶ 83.  As noted above, the Federal Reserve Board has prohibited Visa from promulgating rules that inhibit a merchant's choice in routing debit card transactions for processing.  As also noted above, the Federal Reserve Board has already rejected Visa's position that a payment card network may rely on a cardholder's choice in order to inhibit a merchant's choice in routing debit card transactions for processing.

92.     Because of the potential for customer confusion, and because Kroger wanted to preserve its rights regarding routing under the Federal Reserve Board's regulations, Kroger chose to follow, and reasonably relied on, the alternative specification in Visa's TADG in developing its new POS terminals (and corresponding software) for chip card acceptance.

Kroger configured its new terminals to eliminate the Visa AID as an option, as Visa allowed for in the TADG, thereby using the US Debit AID for all debit chip card transactions.

93.     Notwithstanding what it had previously represented in the TADG, and only after Kroger had spent millions of dollars to develop the hardware and software for its POS terminals to accept chip cards, Visa reversed course and informed Kroger that its chip card acceptance terminals did not meet Visa's specifications because they did not give the customer an opportunity to choose the Visa AID.

94.     At this point, Kroger cannot re-program tens of thousands of POS terminals to offer Visa cardholders the "choice" between the Visa AID and the US Common Debit AID without incurring significant costs.  Further, Kroger's software vendor is presently unable to reprogram Kroger's POS terminals as Visa demands, and Visa knows this.  Nevertheless, Visa has signaled its intention to have Kroger reprogram its POS terminals with the Visa AID when the vendor is able to do so, and for the additional approximately 12,000 POS terminals at Kroger's 2,300 fuel locations to be similarly configured by October 1, 2017.  More to the point, though, Kroger should not have to do any of this because Visa's preferred specification (the Visa AID) violates the Federal Reserve Board's regulations regarding merchant choice in routing debit card transactions.  *See supra* ¶¶ 83-87, 91.

95.     Visa's position today that Kroger is required to ask Visa debit chip cardholders to choose between "Visa Debit" and "US Debit" or some functional equivalent is another example of Visa's strategy to insulate itself from competition from other debit networks.  If Visa had its way, Visa would face no competition from other debit networks to process any transactions for which the cardholder selected "Visa Debit," regardless of whether the cardholder uses PIN or signature.  This is because Visa has mandated in its technical specifications, and has interpreted its Honor-All-Cards Rule as requiring, that the selection of "Visa Debit" means that the merchant must route the transaction over a Visa network.

35

96.     In addition, Visa has heavily rigged the choice between "Visa Debit" and "US Debit" in its favor.  Visa debit chip cardholders are already familiar with the Visa brand, and even though they may be indifferent as to how the transaction is routed, or not know that the merchant could route the transaction to a lower cost non-Visa debit network, those cardholders may select "Visa Debit" simply because the Visa name is familiar.  "US Debit," on the other hand, is an entirely generic and unfamiliar term, and most Visa debit chip cardholders may avoid that selection simply because they do not know what "US Debit" means.  *See, e.g., supra* ¶¶ 89-90 (POS screen display).  Visa is therefore requiring Kroger to present its own customers who choose to pay with a Visa debit card a confusing choice to serve Visa's goal of maximizing the number of transactions that must be processed on a Visa debit network.  In doing so, Visa is using its technical specifications for the purpose of eliminating Kroger's and other merchants' rights under federal law to choose among multiple networks in routing debit card transactions for processing.

F.     <u>Visa's Commercial Threats and Millions of Dollars in Fines Have Forced Kroger to Discontinue the POS PIN Verification Requirement, Reconfigure the Software in its POS Terminals, and Stop PIN-less Routing, Each of Which Inhibits Kroger's Ability to Route Visa Debit Transactions to Rival Debit Networks</u>

97.     Visa has made commercial threats to and imposed significant financial penalties on Kroger to force Kroger to discontinue requiring PIN verification at the POS, to reconfigure the software in its POS terminals, and stop PIN-less Routing.  Each of these changes forced on Kroger by Visa inhibits Kroger's ability to route Visa debit transactions to competing third party debit networks that are able to process the transactions.

98.     Visa's commercial threats to and fines of Kroger include the following:

(a)     Visa has threatened to interfere with Kroger's continued acceptance of Visa debit cards.  In a letter dated March 17, 2016, to Vantiv,[22] Visa demanded that Kroger discontinue the PIN Requirement, or otherwise become a "Credit-only Limited Acceptance merchant."  As Visa explained in the letter: "Once Kroger has this designation, [it] will only be allowed to accept Visa Credit cards and will no longer be able to accept Visa Debit products."

(b)     To date, Visa has fined Kroger $7.0 million, of which Kroger has paid $3.1 million, and threatened even more fines of $100,000 per day if Kroger does not do what Visa demands.

(c)     Visa suspended a pricing agreement with Kroger and informed Kroger that Visa is going to increase the prices that Visa charges Kroger to process debit and credit card transactions.

(d)     Visa has forced Kroger to reconfigure the routing software in its POS terminals on an expedited basis to avoid Visa's commercial threats and additional fines.  In a Visa letter dated May 31, 2016 to Vantiv, Visa ominously stated that it "reserves the right to reinstate the willful violation non-compliance assessments[23] of $100,000 per day retroactive from May 23 should full compliance not be achieved or maintained."  Visa has made these threats even though Visa previously approved the software configuration that Kroger was using in its POS terminals to route Visa debit transactions, and Kroger's current POS terminal configuration gives meaning and effect to the Durbin Amendment and the Federal Reserve Board's regulations.

---

[22]     *See supra* note 19.

[23]     Visa tries to soft pedal its heavy-handed tactics by using words like "assessment" to refer to its financial penalties or fines.  For its part, Kroger prefers to call these penalties or fines what they really are.

(e)     Visa has forced Kroger to instruct Vantiv to stop using the lower cost PIN-less Routing available from rival third party debit networks.  *See supra* ¶¶ 7, 48-49.

99.     As noted earlier, *supra* ¶ 5, purchases involving Visa debit cards currently account for more than $29 Billion in sales per year at Kroger.  Purchases involving Visa signature debit transactions accounted for approximately $10 Billion in sales in 2015.  If Visa carried out its draconian threat to terminate Kroger's ability to accept debit cards, then Visa would cause significant injury to Kroger's business, as a material portion of the Visa debit cardholders at Kroger would shop at Kroger's competitors that did accept Visa debit cards.

100.     The lost customers and market share that Kroger would suffer if Visa followed through with its threat to terminate Kroger's acceptance of Visa debit cards is an irreparable injury for which no adequate remedy exists at law.

101.     While Kroger believes that the PIN Requirement is an efficient and beneficial way to reduce payment card fraud and stimulate competition between Visa and rival debit networks for Kroger debit transaction volume, Visa has forced Kroger to discontinue the PIN Requirement as a result of Visa's threats and fines.  As a result, Visa subjects Kroger and its customers to a greater risk of debit card fraud each day, and Kroger continues to pay higher prices to Visa than it otherwise would to process certain debit chip card transactions as signature debit transactions because Visa's conduct has inhibited Kroger's choice in routing transactions to lower-cost debit networks.

## COUNT I

## DECLARATORY JUDGMENT
## (Regarding PIN Requirement)

102.     Kroger incorporates by reference the allegations in paragraphs 1 to 101 above.

103.     Kroger and Visa have an actual, substantial, and continuing controversy regarding whether Visa can use its "Honor-All-Cards" Rule to prohibit Kroger from requiring a

PIN to verify transactions involving Visa debit chip cards.  Kroger contends that the Federal Reserve Board's regulations pursuant to the Durbin Amendment prohibit Visa from interpreting its Honor-All-Cards Rule to block the PIN Requirement.  Visa disagrees.  A declaration of rights is both necessary and appropriate to establish that Visa cannot interpret its Honor-All-Cards Rule to block Kroger from re-instituting the PIN Requirement for transactions on Visa debit chip cards.

104.    Because of the current controversy regarding Visa's Honor-All-Cards Rule, Kroger has ceased its efforts for the time being to reduce fraud and promote competition for processing of Visa debit card transactions by implementing the PIN Requirement.

105.    Because of the current controversy regarding the interpretation of Visa's Honor-All-Cards Rule, Visa has demanded that Kroger re-configure tens of thousands of POS terminals. On penalty of continued fines from Visa if it did not do so, Kroger is modifying its POS systems at thousands of stores at considerable expense to Kroger.  This is not Kroger's preferred solution, but Kroger has no choice.

106.    A declaration of the parties' rights and responsibilities under the Federal Reserve Board's regulations as applied to Visa's Honor-All-Cards Rule will remove the doubt that presently exists and render practical and actual help in ending the controversy.  Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the present controversy is necessary and appropriate under the circumstances.

## COUNT II

### DECLARATORY JUDGMENT
### (Regarding Visa Technical Specifications)

107.    Kroger incorporates by reference the allegations in paragraphs 1 to 101 above.

108.    Kroger and Visa have an actual, substantial, and continuing controversy regarding whether Visa can require Kroger to: (i) configure their POS terminals to function with

both the Visa AID and the US Debit AID; and (ii) include a screen on its POS terminals that asks Visa debit chip cardholders to select the Visa AID or the US Common Debit AID. Kroger contends that Visa's technical specifications, as set forth in Visa's TADG, allow for an alternative specification under which Kroger can use the US Common Debit AID for all Visa debit chip card transactions. Kroger also contends that Visa's interpretation of its technical specifications and its Honor-All-Cards Rule – including Visa's demand that Kroger must route all transactions for which the Visa AID is selected over Visa's network – violates the Federal Reserve Board's regulations pursuant to the Durbin Amendment because it inhibits Kroger's choice in routing a significant number of Visa debit chip card transactions. Visa disagrees with Kroger's position.

109. A declaration of rights is both necessary and appropriate to establish that Visa cannot interpret its technical specifications to require Kroger to: (i) configure its POS chip terminals to function with both the Visa AID and the US Common Debit AID; and (ii) include a screen on its POS terminals that asks Visa debit chip cardholders to select the Visa AID or the US Common Debit AID. Further, a declaration of rights is both necessary and appropriate to establish that Visa cannot force Kroger to route all Visa debit card transactions for which the Visa AID is selected over a Visa network.

110. Because of the current controversy regarding the interpretation of Visa's technical specifications and its Honor-All-Cards Rule, Visa has demanded that Kroger re-configure tens of thousands of POS terminals. On penalty of continued fines from Visa if it did not do so, Kroger is modifying its POS systems at thousands of stores at considerable expense to Kroger. This is not Kroger's preferred solution, but Kroger has no choice.

111. A declaration of the parties' rights and responsibilities under the Federal Reserve Board's regulations as applied to Visa's technical specifications will remove the doubt that presently exists and render practical and actual help in ending the controversy. Pursuant to 28

U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the present controversy is necessary and appropriate under the circumstances.

## COUNT III

### DECLARATORY JUDGMENT
### (Regarding Visa Interference with PIN-less Routing)

112.    Kroger incorporates by reference the allegations in paragraphs 1 to 101 above.

113.    Kroger and Visa have an actual, substantial, and continuing controversy regarding whether Visa can fine Kroger, or threaten to terminate Kroger's ability to accept Visa debit cards, in response to Kroger using PIN-less Routing.

114.    As noted earlier, on June 17, 2016, Visa informed Kroger that Visa would stop the fines to Kroger and remove the requirement of Limited Acceptance if, in addition to Kroger eliminating the PIN Requirement and making certain changes to its POS terminals, Kroger stopped using PIN-less Routing and only routed Visa signature debit transactions to Visa.  On June 20, 2016, Kroger instructed Vantiv to stop PIN-less Routing, and on June 21, 2016, Vantiv confirmed that it had done so for Kroger.  Visa has informed Kroger that it cannot use PIN-less Routing going forward unless it provides a "clear path for a consumer to choose Visa," which are Visa buzz words for Kroger using the Visa AID in its POS terminals, which would defeat the purpose of PIN-less Routing and inhibit Kroger's routing options in violation of the Durbin Amendment and the Federal Reserve Board's regulations.

115.    Visa's conduct with respect to Kroger's use of PIN-less Routing as alleged in this Count violates the Durbin Amendment, and the Federal Reserve Board's regulations implementing the Durbin Amendment, because Visa is inhibiting Kroger's right to choose among Visa and other debit networks for a substantial number of signature debit transactions.

116.    Because of Visa's threats and the controversy they have generated, Kroger has discontinued its use of PIN-less Routing.  As a result, Kroger is paying higher fees to route a

substantial number of signature debit transactions to Visa for processing that Kroger would otherwise route to third party debit networks at a lower price.

117.     A declaration of the parties' rights and responsibilities under the Federal Reserve Board's regulations as applied to Visa's technical specifications will remove the doubt that presently exists and render practical and actual help in ending the controversy.  Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the present controversy is necessary and appropriate under the circumstances.

## COUNT IV

## PROMISSORY ESTOPPEL
## (Regarding Visa Technical Specifications)

118.     Kroger incorporates by reference the allegations in paragraphs 1 to 101 above.

119.     The statements by Visa to Kroger described in paragraphs 67, 68, 73, 76 and 78 above, individually or two or more in combination, constitute a clear and unambiguous promise or representation by Visa that it would not prohibit Kroger from requiring PIN verification at Kroger's new chip-enabled POS terminals and not prohibit Kroger from configuring its POS terminals to use the US Common Debit AID for routing purposes and eliminate the Visa AID.

120.     Kroger relied on the foregoing promise or representation by Visa in directing that its new chip-enabled POS terminals be programmed to require PIN verification by the cardholder for all debit chip card transactions, to designate the US Common Debit AID for routing purposes in Kroger POS terminals and eliminate the Visa AID, and in spending the money that it did to have this work done.

121.     In addition to the reasons alleged above, Kroger's reliance on Visa's promise or representation was reasonable for Kroger, and reasonably foreseeable by Visa, because, among other reasons: (i) Visa was (and is) the dominant payment card network; (ii) Visa was the driving force in the chip migration to the United States; (iii) Visa's Executive Vice President

spoke authoritatively about what merchants could do in terms of the POS programming and routing; (iv) Visa's TDAG was published by Visa and presented to merchants as authoritative; (v) Kroger employees communicated directly with Visa employees about the software configuration of the chip terminals that Kroger was developing at the time; and (vi) Kroger's POS terminal specifications passed certification and were approved by ICC under the oversight of Visa.  As Vantiv explained to Visa in a letter dated May 10, 2016: "[Kroger's policy of requiring POS PIN verification for chip-based debit transactions] was authorized by Visa in its oversight of the EMV certification process for Kroger."  (Emphasis added.)  Additionally, because approximately 51% of all debit card transaction volume occurred on Visa debit chip or magnetic swipe cards, Visa knew or reasonably should have known that Kroger had to replace its POS terminals with new chip-enabled terminals or otherwise risk losing its customers who paid with debit chip cards, which represent a substantial source of business to Kroger.

122.    Despite Kroger's reasonable reliance on Visa's promise or representation, Visa has now reversed course and informed Kroger that the required PIN verification by cardholders as specified in the programming in Kroger's new chip-enabled POS terminals, and the designation of the US Common Debit AID as the AID to use for routing purposes, do not meet Visa's Rules.  Visa has informed Kroger of this only after Kroger had already spent millions of dollars to purchase and program the software in tens of thousands of new chip-enabled POS terminals in reasonable reliance on Visa's promise or representation.

123.    Had Kroger known that Visa would not accept Kroger's newly configured, chip-enabled POS terminals if they required PIN verification, and if the US Common Debit AID was used as the AID for routing purposes and Visa's AID was eliminated, then Kroger would not have spent the millions of dollars that it did in having the software specifications configured to require PIN verification, and to have the US Common Debit AID used for routing purposes and eliminate the Visa AID.  Kroger also would have filed this lawsuit sooner to seek a declaration

that Visa's requirements did not comply with federal law, and Kroger would have made substantial changes to implementing chip compliance including, but not limited to, the technical design of its chip terminals and the timing of its terminal upgrades.

124.    Kroger has been damaged as a proximate result of relying upon Visa's promise or representation.  This damage includes, without limitation, (i) the millions of dollars that Kroger has spent to develop software specifications to be chip-compliant and to purchase tens of thousands of chip-enabled POS terminals to accept chip cards in accordance with software specifications that required PIN verification and used the US Common Debit AID instead of the Visa AID; and (ii) the significant amount of money that Kroger has spent and is having to spend to reconfigure the software specifications in its chip-enabled POS terminals to allow for signature verification, and to satisfy Visa's demands for a workaround regarding the use and treatment of Visa's AID in Kroger's POS chip terminals, after Visa forced Kroger to make these changes.

## COUNT V

## NEGLIGENT MISREPRESENTATION
### (Regarding Visa Technical Specifications)

125.    Kroger incorporates by reference the allegations in paragraphs 1 to 101 above.

126.    In the course of its business, for which it has a pecuniary interest, Visa has supplied false information to Kroger, namely, that in programming the chip-enabled POS terminals that Kroger would have to purchase to accept chip cards, Kroger could configure the software to require PIN verification by the cardholder and designate the US Common Debit AID as the AID for routing purposes and eliminate the Visa AID.

127.    The false information that Visa has provided Kroger includes the specific information described in paragraphs 67, 68, 73, 76 and 78 above.

128.    In addition to the reasons alleged above, and in paragraph 121, Visa had knowledge superior to Kroger's about the specifications required by Visa for Kroger's POS chip terminals to comply with Visa's requirements because, among other reasons: (i) Visa had experience with chip card specifications in Europe and elsewhere in the world for many years before requiring U.S. merchants to implement them; (iii) Visa promotes PIN verification at the POS with chip cards in Europe and elsewhere in the world; (iv) Visa published the TADG, which was authoritative; (v) Visa employees with experience with the POS terminal specifications at issue here communicated directly with and advised Kroger about what it could do with regard to these specifications; (vi) Visa exercised oversight authority of the chip certification process for Kroger; and (vii) Visa's Executive Vice President spoke authoritatively about what merchants could do in terms of the programming of POS terminals to be compliant with chip specification requirements and Visa's Rules.

129.    In addition to the reasons alleged in above and in paragraph 121 above, Kroger's reliance on Visa's false statements was reasonable and justifiable because, among other reasons, Visa had superior knowledge about its Rules and the specifications for the chip compliant POS terminals as alleged in this Count.

130.    Visa failed to exercise reasonable care or competence in communicating to Kroger the information described above.  Visa should not have communicated to Kroger that it could have the software in its new chip-enabled POS terminals programmed to require PIN verification by the cardholder and to use the US Common Debit AID without a POS terminal screen asking the cardholder to choose between the Visa AID and the US Common Debit AID if, in fact, this was not true.

131.    Visa's false information caused pecuniary loss to Kroger as described in paragraph 124 above.

45

## PRAYER FOR RELIEF – COUNTS I, II AND III

WHEREFORE, Kroger prays for the following relief:

A.     A judgment from this Court declaring whether, under federal law, Visa can use its Honor-All-Cards rule to block Kroger from requiring a PIN for all Visa debit chip card transactions.

B.     A judgment from this Court declaring: (i) whether, under federal law, Visa can prohibit Kroger from using the US Common Debit AID in its chip-enabled POS terminals for routing purposes and eliminate the Visa AID; (ii) whether, under federal law, Visa can force Kroger to include a screen on its POS chip terminals asking Visa debit chip cardholders to choose between the Visa AID and the US Common Debit AID; and if yes to (i) or (ii), then (iii) whether, under federal law, Visa can force Kroger to route all transactions for which the Visa AID is selected over a Visa network.

C.     A judgment from this Court declaring whether under federal law Visa can force Kroger to stop PIN-less Routing.

D.     Such other and further relief as the Court may deem just and proper, including, without limitation, damages in the amount of any fines that Visa has imposed on Kroger in violation of federal law.

## PRAYER FOR RELIEF – COUNTS IV AND V

WHEREFORE, Kroger prays for the following relief:

A.     A judgment against Visa by the Court for damages.

B.     Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Kroger demands a trial by jury of all issues so triable.

Dated:  June 27, 2016

Respectfully submitted,

David S. Blessing (#0078509)
William H. Blessing (#0006848)
The Blessing Law Firm
119 East Court Street
Suite 500
Cincinnati, Ohio  45202
Tel:    (513) 621-9191
Fax:    (513) 621-7086
E-mail:  david@blessing-attorneys.com
            bill@blessing-attorneys.com


By:_____
        David S. Blessing

***Counsel for Plaintiff The Kroger Co.***


Of Counsel:

KENNY NACHWALTER, P.A.
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
James Almon, Esquire
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, Florida  33131
Tel:    (305) 373-1000
Fax:    (305) 372-1861
E-mail:  rarnold@knpa.com
            wblechman@knpa.com
            jalmon@knpa.com

545097.1