**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION)**


The Kroger Co.,                                    Case No: 1:16-cv-00693 (MRB)

        Plaintiff,

vs.

Visa Inc.,

        Defendant.

_____/


<u>**PUBLIC VERSION**</u>


<u>**PLAINTIFF THE KROGER CO.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT VISA INC.'S MOTION TO DISMISS**</u>

# **TABLE OF CONTENTS**

I. THIS COURT HAS THE AUTHORITY TO RENDER A DECLARATORY JUDGMENT FOR KROGER ................................................................ 2

    A. The Parties Dispute Whether Kroger Has Violated a Term of its Agreement with Visa ........................................................................................ 2

    B. The Declaratory Judgment Act Is Used to Resolve Contract Disputes ........................ 4

    C. The Durbin Amendment is Relevant to Show Why This Court Should Reject Visa's Interpretation of the Honor-All-Cards Rule ........................................ 6

    D. This Court Should Exercise its Discretion to Hear Kroger's Declaratory Judgment Claims ...................................................................................... 7

II. KROGER'S STATE LAW CLAIMS ARE NOT SUBJECT TO DISMISSAL ................... 9

    A. The Incentive Agreement Does Not Apply to Kroger's State Law Claims ................ 9

        1. ████████████████████████████████████████ 10

        2. ████████████████████████████████████████ 13

    B. Kroger's State Law Claims Are Governed by Ohio Law ......................................... 14

    C. This Court Has Authorized Negligent Misrepresentation Claims Against Visa Under Remarkably Similar Facts ................................................................ 16

    D. Kroger Has Alleged Actionable Promises for a Promissory Estoppel Claim ............. 19

III. KROGER REQUESTS LEAVE TO AMEND IF NECESSARY ..................................... 20

IV. CONCLUSION ................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*1 Oak Private Equity Venture Capital Ltd. v. Twitter, Inc.*
    2015 WL 7776758 (Del. Super. Ct. Nov. 20, 2015)............................................................ 19

*ATM Exch., Inc. v. Visa Int'l Serv. Ass'n,*
    2008 WL 3843530 (S.D. Ohio Aug. 14, 2008).................................................... 16, 17, 19, 20

*Bank of N.Y. Mellon v. Bank Capital Funding Trust II,*
    65 A.3d 539 (Del. 2012) ........................................................................................................ 5

*Blankenship v. Alpha Appalachia Holdings, Inc.,*
    2015 WL 2408255 (May 28, 2015) ........................................................................................ 6

*Brown v. Matauszak,*
    415 Fed. Appx. 608 (2011) .................................................................................................. 20

*Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.,*
    474 Fed. Appx. 429 (6th Cir. 2012)................................................................................... 4, 6

*Clifford v. Church Mut. Ins. Co.,*
    2015 WL 6119436 (S.D. Ohio Sep. 30, 2015)...................................................................... 6

*Corporate Property Assocs. v. Hallwood Group, Inc.,*
    817 A.2d 777 (Del. 2003) .................................................................................................... 12

*Culy Constr. & Excavating, Inc. v. Lany Directional Drilling Co.,*
    2012 WL 2071804 (S.D. Ohio Jun. 8, 2012) ...................................................................... 18

*DCV Hldgs., Inc. v. ConAgra, Inc.,*
    889 A.2d 954 (Del. 2005) .................................................................................................... 12

*Delman v. Cleveland Hts.,*
    534 N.E.2d 835 (Ohio 1989) ............................................................................................... 18

*Dodge Data & Analytics, LLC v. iSqFt, Inc.,*
    2016 WL 1702326 (S.D. Ohio Apr. 28, 2016) .................................................................... 14

*Dominion Liquid Tech., LLC v. Weiss,*
    2012 WL 1197933 (S.D. Ohio Apr. 10, 2012) .................................................................... 18

*E.I. du Pont de Nemours & Co. v. Fla. Evergreen Foliage,*
    744 A.2d 457 (Del. 2000) .................................................................................................... 12

*E.I. du Pont de Nemours & Co. v. Shell Oil Co.*,
   498 A.2d 1108 (Del. 1985) ................................................................. 11

*Ford v. New Century Mortgage Corp.*,
   797 F. Supp. 2d 862 (N.D. Ohio 2011)................................................ 17

*Gutter v. Dow Jones, Inc.*,
   490 N.E.2d 989 (Ohio 1986) ............................................................... 17

*Hodell-Natco Indus., Inc. v. SAP Am., Inc.*,
   13 F. Supp. 3d 786 (N.D. Ohio 2014) ............................................ 17, 18

*In re Commercial Money Ctr., Inc., Equip. Lease Litig.*,
   603 F. Supp. 2d 1095 (N.D. Ohio Mar. 11, 2009) ............................... 15

*In re G-I Holdings, Inc.*,
   755 F.3d 195 (3d Cir. 2014)................................................................. 12

*In re Nat'l Century Fin. Enterps., Inc. Inv. Litig.*,
   580 F. Supp. 2d 630 (S.D. Ohio 2008) ........................................... 17, 18

*J.A. Jones Constr. Co. v. City of Dover*,
   372 A.2d 540 (Del. Super. Ct. 1977) ................................................... 12

*J.S. Alberici Constr. Co. v. Mid-West Conveyor Co., Inc.*,
   750 A.2d 518 (Del. 2000) ...................................................................... 6

*Kebe v. Nutro Mach. Corp.*,
   507 N.E.2d 369 (Ohio Ct. App. 1985)................................................... 6

*Mayer v. Mylod*,
   988 F.2d 635 (6th Cir. 1993) ............................................................ 2, 7

*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*,
   852 F. Supp. 2d 925 (S.D. Ohio Feb. 10, 2012) .................................. 14

*National Mulch & Seed, Inc. v. Rexius Forst By-Products, Inc.*,
   2007 WL 894833 (S.D. Ohio Mar. 22, 2007).................................. 17, 18

*Orrand v. Keim Concrete Pumping, Inc.*,
   2010 WL 3447647 (S.D. Ohio Aug. 30, 2010)...................................... 18

*Ortega v. Wells Fargo Bank, N.A.*,
   2012 WL 275055 (N.D. Ohio Jan. 31, 2012)........................................ 17

*Republic/NFR & C Parking of Louisville v. Reg. Airport Auth. of Louisville and Jefferson Cty.*,
   410 F.3d 888 (6th Cir. 2005) ................................................................. 4

*Rosy Blue, NV v. Lane*,
    767 F. Supp. 2d 860 (S.D. Ohio 2011) ................................................................. 18

*Safety Today, Inc. v. Roy*,
    2012 WL 2374984 (S.D. Ohio Jun. 22, 2012) ...................................................... 15

*Saunders v. Mortensen*,
    801 N.E. 2d 452 (Ohio 2004) ............................................................................... 5

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008) ................................................................................. 5

*Slowe v. Pike Creek Court Club, Inc.*,
    2008 WL 5115035 (Del. Super. Ct. Dec. 4, 2008) .............................................. 12

*Snyder v. Fleetwood RV, Inc.*,
    2016 WL 339972 (S.D. Ohio Jan. 28, 2016) .................................................. 14, 15

*Southwestern Life Ins. Co. v. Mercer*,
    100 Fed. Appx. 372 (6th Cir. 2002) ....................................................................... 4

*State Farm Mut. Auto. Ins. Co. v. Wagamon*,
    541 A.2d 557 (Del. 1988) ..................................................................................... 6

*Vichi v. Koninklijke Philips Electronics, N.V.*,
    85 A.3d 725 (Del. Ch. 2014) ............................................................................... 17

*Walker Digital, LLC v. Expedia, Inc.*,
    950 F. Supp. 2d 729 (D. Del. 2013) ..................................................................... 11

*Western World Ins. Co. v. Hoey*,
    773 F.3d 755 (6th Cir. 2014) ....................................................................... 4, 8, 9

## **Federal Statutes and Regulations**

12 C.F.R. § 235.7 ......................................................................................................... 7

15 U.S.C. § 1693 .......................................................................................................... 7

Plaintiff The Kroger Co. ("Kroger") submits this memorandum of law in opposition to Defendant Visa Inc.'s ("Visa") motion to dismiss (D.E. 17).  For the reasons stated in this Memorandum, this Court should deny Visa's motion.

Visa's motion to dismiss rests on two mistaken premises.  <u>First</u>, Visa argues that Kroger's declaratory judgment claims require a private right of action under the Durbin Amendment.  That is incorrect.  Kroger's declaratory judgment claims seek to resolve a dispute over the meaning of a term of Kroger's contract with Visa (the "Incentive Agreement," Ex. A to D.E. 17).  Kroger asks this Court to declare that Kroger has not breached that term of the contract, which is a proper basis for a declaratory judgment action.  <u>Second</u>, Visa argues that certain terms of the Incentive Agreement bar Kroger's state law claims.  However, Visa is incorrect because the scope of the Incentive Agreement explicitly excludes the subject matter of those claims.

Visa's position appears to be that Visa can: (1) impose $7 million in fines on Kroger without a valid justification (Compl. ¶ 4); (2) change its position about technical specifications and force Kroger to pay the cost of re-programming 54,000 point of sale ("POS") terminals (*id.* ¶¶ 1, 105, 110, 122, 124, 131); (3) interfere with Kroger's debit routing rights under federal law (*id.* ¶¶ 1, 83-91, 105, 108, 115); <u>and</u> (4) stop Kroger from seeking any recourse in the courts against Visa (D.E. 17 at 1-2).  Visa's extreme position has no basis in the law or any of the contract provisions that Visa has put at issue.  Kroger's claims should go forward.

Much is at stake in this lawsuit for Kroger and its customers.  Visa is forcing Kroger to use a verification method that results in 700% more fraud for hundreds of millions of debit transactions involving billions of dollars.  Compl. ¶¶ 23, 99, 101.  Visa's interference with competition from other networks in debit card processing has led to higher debit card acceptance costs for Kroger, which affect the retail prices that Kroger's customers pay.  *Id.* ¶¶ 33-34, 46, 79,

101.  Also, the Visa-mandated POS terminal display prompts confuse customers and are rigged to charge Kroger higher fees for processing Visa debit cards.  *Id.* ¶¶ 88-96.

## I.  THIS COURT HAS THE AUTHORITY TO RENDER A DECLARATORY JUDGMENT FOR KROGER

### A.  The Parties Dispute Whether Kroger Has Violated a Term of its Agreement with Visa

To assess Kroger's declaratory judgment claims, it helps to understand why Kroger has brought this lawsuit.  Kroger sued Visa because Visa has:

- Forced Kroger to use a cardholder's signature to verify debit chip card transactions, even though signature verification leads to more payment card fraud.  The increased fraud harms Kroger and its customers.  (Compl. ¶¶ 1-2, 22-28, 101);

- Forced Kroger to re-program more than 54,000 point of sale terminals to Visa's preferred specifications at Kroger's significant expense (*id.* ¶¶ 1, 7, 110); and

- Forced Kroger to stop using other networks besides Visa to process signature debit transactions (known as "PIN-less Routing") (*id.* ¶¶ 7, 47-49).

To make matters worse, Visa has resorted to fines and threats to get its way.  *Id.* ¶¶ 4-6, 97-98.  Visa has fined Kroger $7 million, of which Kroger has paid $3.1 million to date.  *Id.* ¶ 4.  Visa also has told Kroger that it would suspend parts of the Incentive Agreement, which would increase Visa's processing fees.  *Id.*  Visa has even threatened to cut off Kroger's ability to accept Visa debit cards altogether if Kroger did not capitulate to Visa's demands.  *Id.*  Visa has taken these actions to force Kroger into using Visa's network to process more debit transactions, which generates more fees for Visa.  *Id.* ¶¶ 40-46, 85-86, 88, 95-96.  On the motion to dismiss, Kroger's allegations are taken as true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

A common thread tying together Visa's conduct is that Visa has justified its actions against Kroger by claiming that Kroger has violated Visa's "Honor-All-Cards" Rule (also referred to as the "Rule").  *Id.* ¶¶ 80-87, 95, 103-105, 108, 110, 114.  The Rule is one of Visa's Operating Regulations that governs Kroger's and other merchants' acceptance of Visa cards.  *Id.*

¶ 17(e).  ███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

The Honor-All-Cards Rule consists of Rules 1.5.4.5 and 1.5.4.6 in Visa's Operating Regulations.[1] Compl. ¶ 17(e).  The Rule reads as follows:

> 1.5.4.5    Honor All Cards - US Region
>
> A US Merchant that wishes to accept Visa Cards must accept any valid Visa Card in its category of acceptance that a Cardholder properly presents for payment.  This means that the Merchant must permit the Cardholder to choose whether to pay for a transaction with that Visa Card or with some other means of payment accepted by the Merchant. The Merchant may request or encourage a Cardholder to use a means of payment other than a Visa Card.
>
> 1.5.4.6    Selection of Payment System - US Region
>
> In the US Region, if a Cardholder presents a Visa Card that is in the Merchant's category of acceptance and that bears a Mark representing another payment service:
>
> - The Merchant must honor the Cardholder's request if the Cardholder indicates that the transaction is to be processed as a Visa Transaction.
>
> - The Merchant may process the transaction as something other than a Visa Transaction despite an initial indication by the Cardholder that the transaction is to be processed as a Visa Transaction, but only if the Cardholder agrees that the transaction may be processed as something other than a Visa Transaction.  The Merchant may not mislead the Cardholder concerning what payment service or system will be used.  If the merchant provides any information regarding the customer's rights related to various transaction choices, that information must be accurate.

Kroger strongly disagrees with Visa's reading of the Honor-All-Cards Rule.  In Kroger's view, the Rule has nothing to do with the form of verification that Kroger uses to prevent fraud.

---

[1]    *See* Exhibit 1 (full copy of Visa's rules available at http://vi.sa/2cq3B5l).  As Visa notes, courts may consider documents that are incorporated by reference into the Complaint and central to the claim on a Rule 12 motion.  D.E. 17 at 8 (citing cases).

Compl. ¶ 81.  The Rule also has nothing to do with the technical specifications for Kroger's chip terminals, or with the use of PIN-less Routing.  Further, as explained below, Visa's reading of the Rule to cover these subjects would give it a meaning that violates federal law.

Kroger seeks a declaration from this Court that Kroger has not violated the Honor-All-Cards Rule.  And, if this Court finds that Visa wrongly interpreted the Rule to justify its fines and other conduct, Kroger will seek to have Visa pay back the fines and any other proper relief.

### B. The Declaratory Judgment Act Is Used to Resolve Contract Disputes

Visa's argument regarding a private right of action is a red herring.  Kroger is not asking this Court to find a private right of action under the Durbin Amendment.  Instead, Kroger is asking this Court to issue a declaratory judgment to settle their dispute over Visa's claim that Kroger has violated the Honor-All-Cards Rule, and thus breached the parties' contract.  In diversity jurisdiction cases (Compl. ¶ 11), federal courts have the authority to issue declaratory judgments to resolve contractual disputes between the parties.  *See Western World Ins. Co. v. Hoey*, 773 F.3d 755, 762 (6th Cir. 2014) (affirming federal declaratory judgment on interpretation of contract under state law); *Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 Fed. Appx. 429, 432 (6th Cir. 2012) (jurisdiction over declaratory judgment claim was proper "by virtue of the Declaratory Judgment Act and the diversity jurisdiction statute").

Further, declaratory judgments are proper in the context of the plaintiff seeking a declaration that it has not violated a term of the parties' contract.  *See Republic/NFR & C Parking of Louisville v. Reg. Airport Auth. of Louisville and Jefferson Cty.*, 410 F.3d 888, 891 (6th Cir. 2005) (plaintiff sought declaratory judgment that it was not in breach of contract); *Southwestern Life Ins. Co. v. Mercer*, 100 Fed. Appx. 372, 374 (6th Cir. 2002) (affirming declaratory judgment that plaintiff had not violated settlement agreement).

Here, Kroger asks the Court to declare that Kroger has not violated the Honor-All-Cards Rule (*e.g.*, Cmplt. ¶¶ 103, 110), which is a term of the parties' contract.[2]  *See* D.E. 17, Ex. A, Sch. C ¶ 1.  Visa interprets the Rule such that requiring PIN verification, using PIN-less Routing, and not including Visa's preferred display screens on Kroger's terminals are all violations of the Rule.  Kroger submits that the Rule does not apply to the practices and debit routing at issue in this lawsuit.

Notably, the Honor-All-Cards Rule says <u>nothing</u> about: (1) the use of PIN or signature to verify a transaction; (2) whether a merchant can use PIN-less routing; and (3) whether a merchant has to include a screen on its point of sale terminals to give customers the choice between "Visa Debit" and "US Debit."  The Rule simply does not say what Visa thinks it does.

This Court can reject Visa's interpretation because it is unsupported by the Rule's plain language.  *See Bank of N.Y. Mellon v. Bank Capital Funding Trust II*, 65 A.3d 539, 554-55 (Del. 2012) (defendant's interpretation "unreasonable because it conflicts with the plain language" of contract provision).[3]  It is well within this Court's authority to decide this question of contract interpretation in a federal declaratory judgment action.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 565 (6th Cir. 2008) (relying on plain meaning of contract provision to decide federal

---

[2]    *See, e.g.*, Compl. ¶ 82 ("Visa's <u>interpretation of its Honor-All-Cards Rule</u> with respect to the PIN Requirement contradicts Visa's Executive Vice President's April 2015 letter to Merchants."); *id.* ¶ 83 (Visa's <u>interpretation of its Honor-All-Cards Rule</u> also conflicts with the Durbin Amendment"); *id.* ¶ 105 ("Because of the current controversy <u>regarding the interpretation of Visa's Honor-All-Cards Rule</u>, Visa has demanded that Kroger re-configure tens of thousands of POS terminals.") (emphasis added).

[3]    Kroger's position is that Delaware law applies in interpreting the terms of the Incentive Agreement, including the Honor-All-Cards Rule.  However, as explained below, Ohio law applies to Kroger's state law claims because they are beyond the scope of the Incentive Agreement.  *See infra* at 14.  That said, the principles of contract construction on which Kroger relies are well-established in Ohio as well.  *See Saunders v. Mortensen*, 801 N.E. 2d 452, 454 (Ohio 2004) (courts start with plain language in questions of contract construction).

declaratory judgment claim); *Chad Youth*, 474 Fed. Appx. at 434 (accord). The foregoing analysis is an independent basis to deny Visa's motion on Kroger's declaratory claims.

### C.   The Durbin Amendment is Relevant to Show Why This Court Should Reject Visa's Interpretation of the Honor-All-Cards Rule

Kroger believes that the plain language of the Honor-All-Cards Rule supports Kroger's position. However, even if this Court concludes that the Rule's plain language is susceptible to more than one reading, Visa's interpretation of the Rule should be rejected because it violates public policy. Specifically, Visa reads the Rule in a way that violates the Durbin Amendment.

A basic principle of contract construction is that courts should reject an interpretation of a contract that would be inconsistent with the law. *See J.S. Alberici Constr. Co. v. Mid-West Conveyor Co., Inc.*, 750 A.2d 518, 520 (Del. 2000) (rejecting attempt "to interpret a contract provision in a manner repugnant to the policy of Delaware"); *Blankenship v. Alpha Appalachia Holdings, Inc.*, 2015 WL 2408255, at *17 (May 28, 2015) (using public policy as a factor to decide between competing contract interpretations).[4] Similarly, if the Honor-All-Cards Rule has a meaning that is contrary to law, then the Rule would be unenforceable. *See State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557, 558 (Del. 1988) (contract provision that violated state statute held unenforceable). It follows that if Visa is advancing an interpretation of the Honor-All-Cards Rule that would violate the Durbin Amendment, then this Court should reject it.

The Durbin Amendment and the Federal Reserve Board's regulations provide that a payment card network "shall not … **by contract, requirement, condition, penalty, or otherwise**, inhibit the ability of any person who accepts debit cards for payments to direct the

---

[4]       This is a basic principle of contract construction in Ohio as well. *See Clifford v. Church Mut. Ins. Co.*, 2015 WL 6119436, at *6 (S.D. Ohio Sep. 30, 2015) (courts "prefer a meaning which gives [the contract] vitality rather than a meaning which renders its performance illegal."); *Kebe v. Nutro Mach. Corp.*, 507 N.E.2d 369, 370 (Ohio Ct. App. 1985) (accord).

routing of electronic debit transactions for processing over any payment card network that may process such transactions."  15 U.S.C. § 1693*o*-2 (emphasis added); 12 C.F.R. § 235.7 (same).

The Complaint explains how Visa has misinterpreted its Honor-All-Cards Rule to interfere with Kroger's federally-protected routing rights.  Compl. ¶¶ 2, 81-87.  Visa has misinterpreted the Rule as the basis to fine Kroger $7 million for using PIN verification on all debit chip cards to maximize its routing choices.  *Id.* ¶¶ 2, 4, 6.  Visa also has interpreted the Rule to force Kroger to re-program thousands of POS terminals with specifications that limit Kroger's routing choices.  *Id.* ¶ 2, 94-95.  Visa has likewise interpreted the Rule as a basis to suspend the Incentive Agreement and charge Kroger higher fees because Visa disagrees with how Kroger exercises its routing rights.  *Id.* ¶ 4.  Visa has also said that Kroger would no longer be in breach if Kroger stopped using PIN-less Routing.  *Id.* ¶¶ 7, 49.  Kroger has capitulated to Visa's threats and fines, thereby limiting Kroger's debit routing choices.  *Id.* ¶¶ 7, 97-101.  Again, these allegations are taken as true on the motion to dismiss.  *Mayer*, 988 F.2d at 638.

Visa reads the Honor-All-Cards Rule in a way that renders it illegal under the Durbin Amendment.  Visa has used the Rule to justify its retaliation against Kroger's using other networks to process debit transactions.  Visa's extreme reading of the Rule should be rejected because it flies in the face of the Durbin Amendment's prohibition against the use of contract terms to inhibit merchant routing rights.

### D.	This Court Should Exercise its Discretion to Hear Kroger's Declaratory Judgment Claims

The Declaratory Judgment Act gives federal courts discretion on whether to accept declaratory judgment cases.  The Sixth Circuit has identified five factors to guide that discretion:

1.	Whether the declaratory action would settle the controversy;

2.	Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

7

3. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

4. Whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach upon state jurisdiction; and

5. Whether there is an alternative remedy which is better or more effective.

*Western World*, 773 F.3d at 759.

To the extent that these factors apply to Kroger's declaratory judgment claims, they support this Court's exercise of jurisdiction. The first and second factors both point in Kroger's favor. Visa has used its Honor-All-Cards Rule to justify all of its fines and the conduct at issue. Compl. ¶¶ 2, 4, 80, 95, 105, 110. As such, a declaratory judgment would settle the controversy between the parties. Likewise, a declaratory judgment would be useful in clarifying the parties' relationship going forward. There is uncertainty regarding the propriety of Visa's fines, who should bear the cost for re-programming tens of thousands of POS terminals, whether Kroger will have to re-program its terminals again, how Kroger will program an additional 12,000 POS terminals at its fuel locations (Compl. ¶ 94), and whether Kroger should have to accept the less-secure signature verification going forward. A declaratory judgment would clarify those issues.

The third factor does not apply here. There are no other lawsuits pending between Kroger and Visa regarding this dispute, and this case is not an effort to block a lawsuit that would otherwise be filed elsewhere.

The fourth factor also points in Kroger's favor for two reasons. First, Kroger's claim does not interfere with any lawsuits in state court between the parties on the same subject matter, as there are none pending. Second, this Court is in a better position to evaluate Kroger's declaratory judgment claims because they involve the application of the Durbin Amendment, a

recent federal statute on which there is little case law.  Because Kroger's claims involve novel questions of federal law, this Court is the right forum to decide those claims.

Last, there is no better remedy to resolve the parties' dispute.  As noted above, declaratory judgment actions are commonly used to decide ongoing disputes about contract interpretation like the dispute here regarding the meaning of the Honor-All-Cards Rule.

The Sixth Circuit has advised that the "essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair."  *Western World*, 773 F.3d at 760.  A declaratory judgment here would be useful in resolving the dispute and this Court would provide a fair forum to do so.

## II.  KROGER'S STATE LAW CLAIMS ARE NOT SUBJECT TO DISMISSAL

### A.  The Incentive Agreement Does Not Apply to Kroger's State Law Claims

Visa's primary argument against Kroger's state law claims is that those claims are barred, in one way or another, by the Incentive Agreement. █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████

D.E. 17, Ex. A, Sch. A ¶ 6(b) (emphasis added).

 Kroger's state law claims pertain to Visa's misrepresentations regarding Visa's specifications for Kroger's chip-enabled terminals.  Visa made misrepresentations to Kroger about how to program terminals to Visa's specifications, and Kroger relied on those misrepresentations about Visa's specifications to its detriment.  *See, e.g.,* Compl. ¶¶ 67, 68, 73, 76, 78, 119-24, 126-30.





First, ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████.[6]

       ███████████████████████████████████

█████████████████████████████.  In doing so, Visa violates the basic

rule of contract construction that a court should give effect to all contract provisions.  *See E.I. du*

*Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113-14 (Del. 1985) ("[A] court must

construe the agreement as a whole, giving effect to all provisions therein").[7]

       Second, █████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████        *See Corporate Property Assocs. v. Hallwood Group, Inc.*, 817 A.2d 777, 779-80

---

[6]       While Kroger believes that the Incentive Agreement is unambiguous, if the Court finds that there is ambiguity when reading the provisions at issue together, then the Court should consider evidence on the parties' intent, not dismiss the Complaint.  *See Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729, 735 (D. Del. 2013) (if court finds contract provision ambiguous, it may consider outside evidence of parties' intent) (citing Delaware law).

[7]
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

(Del. 2003) (where letter agreement specifically identified its purpose as governing the payoff of a note, general release language did not cover dispute outside defined scope of agreement).

Third, ███████████████████████████ because under Delaware law, "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (narrower of two provisions, which contained a limitation of scope of indemnification controlled over broader indemnification provision); *In re G-I Holdings, Inc.*, 755 F.3d 195, 202-04 (3d Cir. 2014) (general provision that broadly sets forth the right to bring a breach of contract action does not control if it conflicts with more specific provision) (applying Delaware law).

████████████████████████████████████████████████

████████████████████████████████████████████████

███ *See E.I. du Pont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 460 (Del. 2000) ("Delaware law is clear that words of general application used in a release 'which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matter referred to in the recital.'").

Fourth, ██████████████████████████████████████ ████████████████████████████ However, Delaware law does not favor contractual provisions that purport to relieve a party from liability for matters arising from its own fault. *See Slowe v. Pike Creek Court Club, Inc.*, 2008 WL 5115035, at *2-3 (Del. Super. Ct. Dec. 4, 2008); *J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 546 (Del. Super. Ct. 1977).

████████████████████████████████████████████████

████████████████████████████████████████████████



███████████████████████████████████████████████████

████████████████████████████████

**B.**  **Kroger's State Law Claims Are Governed by Ohio Law**

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

For Kroger's state law claims, Ohio's choice of law rules determine the applicable law. *See Dodge Data & Analytics, LLC v. iSqFt, Inc.*, 2016 WL 1702326, at *11 (S.D. Ohio Apr. 28, 2016); *Snyder*, 2016 WL 339972, at *11. Those claims arise in tort, for which the presumption is that the place of injury controls, unless another jurisdiction has a more significant relationship to the suit. *See Snyder*, 2016 WL 339972, at *11. Further, Ohio law is favored where either Ohio's or another state's law would be appropriate. *Dodge Data*, 2016 WL 1702326, at *11.

Under the presumption, Ohio law governs because Kroger is an Ohio corporation with its principal place of business in Ohio. Compl. ¶ 9. As a result, its injury is deemed to have occurred in Ohio. *See In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 603 F. Supp. 2d

1095, 1107-08 (N.D. Ohio Mar. 11, 2009) (because plaintiff was headquartered in Ohio, tortious conduct would injure plaintiff in Ohio and Ohio law would apply under presumption); *Safety Today, Inc. v. Roy*, 2012 WL 2374984, at *6 (S.D. Ohio Jun. 22, 2012) (same).

Ohio is also the jurisdiction with the most significant relationship to this case. The factors to consider in determining which jurisdiction has the most significant relationship are: (a) where the injury occurred; (b) where the conduct causing the injury occurred; (c) the domicile, residence, nationality, and place of incorporation and place of business of the parties; and (d) where the parties' relationship is centered. *See Snyder*, 2016 WL 339972, at *11-12.

The first two factors point to Ohio. The injury occurred in Ohio because Kroger is an Ohio corporation. The conduct at issue (Visa's statements) occurred primarily telephonically or in print. Compl. ¶¶ 49, 66-68, 72-77. Kroger does not know where Visa's employees were when that conduct occurred, but Kroger's employees were in Ohio when Visa made its promises and representations over the telephone regarding Kroger's compliance with Visa's technical specifications. Likewise, Kroger's employees were in Ohio when they read Visa's statements.

The remaining factors do not show that any jurisdiction has a more significant relationship to Kroger's claims than Ohio. The third factor is split among Ohio, where Kroger is incorporated and has its principal place of business; Delaware, where Visa is incorporated; and California, where Visa has its principal place of business. On the fourth factor, the parties' relationship is not centered in any one place. The parties transact business nationwide.

In sum, Ohio has more contacts with this suit than any other jurisdiction. While other jurisdictions also have contact with this suit, those contacts do not overcome the presumption in favor of Ohio law under the place of injury test. *See Commercial Money Ctr.*, 603 F. Supp. 2d at

1108 (applying Ohio law where place of injury was Ohio and, although other jurisdictions had contacts, contacts favored Ohio). Ohio law governs the state law claims under either test.

C.   **This Court Has Authorized Negligent Misrepresentation Claims Against Visa Under Remarkably Similar Facts**

Visa already has been a defendant before this Court on a negligent representation claim, and in that case, Visa made and lost the same arguments that it makes now. *See ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, 2008 WL 3843530 (S.D. Ohio Aug. 14, 2008) (Spiegel, J.) ("*ATM*"). In *ATM*, this Court rejected Visa's argument that a "special relationship" is an element of a negligent misrepresentation claim under Ohio law. It also found that the plaintiff alleged a valid negligent misrepresentation claim based on remarkably similar facts to Kroger's allegations here.

In *ATM*, the plaintiff was a business that bought, refurbished, and resold automatic teller machines ("ATMs"). *Id.* at *1. It sued Visa after Visa released and then abandoned certain technical specifications that it required vendors such as plaintiff to adopt for the security encryption of ATMs. *Id.* at *2. Like Kroger here, the plaintiff's representatives in *ATM* engaged in an approval process that included direct follow-up communications about Visa's specifications. *Id.* at *2-3. The plaintiff spent more than $4.8 million to comply with Visa's requirements; however, Visa then abandoned its specifications and no longer required vendors to follow the specifications that the plaintiff had met at a great expense. *Id.* at *10.

As it has here (D.E. 17 at 15-16), Visa argued in *ATM* that the plaintiff could not assert a negligent misrepresentation claim because Ohio law only recognized the claim in certain business relationships, such "as one who renders opinions to others for their use in guiding their own business transactions, such as accountants or attorneys."[8]  *Id.* at *15. This Court rejected

---

[8]     Visa argues that under Delaware law, a defendant must be in the "business of supplying information" to be liable for negligent misrepresentation. D.E. 17 at 15. Delaware law does not govern Kroger's claim, but Kroger addresses Visa's flawed argument briefly. In

Visa's argument and instead followed *National Mulch & Seed, Inc. v. Rexius Forst By-Products, Inc.*, 2007 WL 894833 (S.D. Ohio Mar. 22, 2007), which held that "a special relationship is not a formal element of a negligent misrepresentation claim under Ohio law." *ATM* at *16.

In *National Mulch*, the court explained that the Ohio courts' discussion of a "special relationship" is related to the element that a "defendant supply false information for the guidance of the plaintiff in its business transactions." 2008 WL 3843530, at *11. "Special relationship" simply means that liability for "negligent misrepresentation is limited to 'the person or one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it." *Id.* (quoting *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 989 (Ohio 1986)); *Hodell-Natco Indus., Inc. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 812-13 (N.D. Ohio 2014) (following *National Mulch*); *In re Nat'l Century Fin. Enterps., Inc. Inv. Litig.*, 580 F. Supp. 2d 630, 646-47 (S.D. Ohio 2008) ("special relationship" not an element; claim requires that "defendant supply false information in a business transaction for plaintiff's guidance and that the plaintiff be the person or part of a limited class for whom defendant intended to supply the information").[9]

---

*Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 763 (Del. Ch. 2014), the court rejected the same argument Visa makes here as "an overly narrow statement of the circumstances under which a person may incur a pecuniary duty under Delaware law." Rather, a defendant has a duty if it expected to profit from providing information such that it could be expected to use reasonable care in providing that information. *Id.* Here, Visa expected to profit from Kroger's programming the chip terminals to Visa's specifications because Visa has a pecuniary interest in Kroger's use of Visa's network. Visa would still have a duty to Kroger under Delaware law.

[9]     Neither the Ohio Supreme Court nor Ohio appellate courts have required a "special relationship" as an element of negligent misrepresentation. Most of the decisions that seem to require a "special relationship" as a distinct element are from the Northern District of Ohio, but even some of those cases explain that the "special relationship" is nothing more than the characterization of the elements, as explained in *National Mulch. See, e.g., Ortega v. Wells Fargo Bank, N.A.*, 2012 WL 275055, at *9 (N.D. Ohio Jan. 31, 2012); *Ford v. New Century Mortgage Corp.*, 797 F. Supp. 2d 862, 872 (N.D. Ohio 2011) (explaining "special relationship" as set forth in *National Mulch*); *see also Orrand v. Keim Concrete Pumping, Inc.*, 2010 WL

Like the plaintiff in *ATM*, Kroger has alleged that it was both the person and a member of a limited group of persons for whose benefit Visa intended to supply information regarding its specifications. *See* Compl. ¶¶ 65-70, 72-76. This is the crux of a negligent misrepresentation claim. *See Culy Constr. & Excavating, Inc. v. Lany Directional Drilling Co.*, 2012 WL 2071804, at *5 (S.D. Ohio Jun. 8, 2012) (denying motion to dismiss negligent misrepresentation claim where subcontractor relied on information provided by general contractor for guidance in making bids); *In re Nat'l Cent. Fin. Enterps., Inc., Inv. Litig.*, 580 F. Supp. 2d at 648 (denying motion to dismiss negligent misrepresentation claim where defendant prepared bond ratings for a limited class of investors and plaintiff relied on that information).

Further, as the plaintiff did in *ATM*, Kroger has otherwise established all of the elements of its negligent misrepresentation claim. Kroger is in the same position as the plaintiff in *ATM*, who also was injured by Visa's changes to its technical specifications. The Ohio Supreme Court has defined the elements of negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*In re Nat'l Cent. Fin. Enters., Inc. Inv. Litig.*, 580 F. Supp. 2d at 646 (quoting *Delman v. Cleveland Hts.*, 534 N.E.2d 835, 838 (Ohio 1989)). As required, Kroger has alleged that: (1)

---

3447647 (S.D. Ohio Aug. 30, 2010). However, decisions from both Ohio districts also reach the same result of *ATM* and do not require a "special relationship" as a separate element. *See, e.g., Dominion Liquid Tech., LLC v. Weiss*, 2012 WL 1197933, at *9 (S.D. Ohio Apr. 10, 2012); *Hodell-Natco*, 13 F. Supp. 3d at 812-13; *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 870 (S.D. Ohio 2011); *In re Nat'l Century*, 580 F. Supp. 2d at 646-47; *Nat'l Mulch*, 2007 WL 894833, at *11. Given the proximity of the facts of this case to those of *ATM*, and the sound reasoning of that decision, this Court should find that a "special relationship" is not a distinct element, but another way of stating the requirement that a defendant supply false information for the guidance of the plaintiff in its business transactions.

Visa supplied Kroger with false information in the course of providing Kroger with information for guidance on the programming of its point of sale terminals; (2) Visa failed to exercise reasonable care or competence in communicating the information; and (3) Kroger justifiably relied on the information. *See* Compl. ¶¶ 65-78, 126-31. Kroger has alleged all of the elements for negligent misrepresentation, and Visa's motion to dismiss this claim must be denied.

### D.    Kroger Has Alleged Actionable Promises for a Promissory Estoppel Claim

Visa's final argument is that Kroger cannot allege an actionable promise by Visa because the alleged statements on which Kroger relied were only made to the public generally. Visa also argues that its statements did not express any commitment by Visa, but were merely vague statements that cannot give rise to a claim. Visa simply ignores that the Complaint alleges that Visa told Kroger directly over the telephone how Kroger could program its terminals. *See* Compl. ¶¶ 66-68 (re: February 11, 2015 conversation).

Kroger's promissory estoppel claim also is based on Visa's statements to the Merchant Advisory Group. This was a limited group, Visa knew that Kroger was a member, and Visa gave specific guidance to the group on chip terminals knowing that members would rely on it. Compl. ¶¶ 72-75. Visa also published a guide with its technical specifications for a specific intended audience: Kroger and other merchants that were updating their POS terminals. *Id.* ¶ 76.

This Court has found that such representations by Visa can support a promissory estoppel claim. In *ATM*, this Court rejected Visa's argument that its technical specifications were not actionable promises.[10] *ATM* at *7-8. It held that Visa's statements, including its published

---

[10]    The Delaware law on which Visa relies also supports Kroger's promissory estoppel claim. *See, e.g., 1 Oak Private Equity Venture Capital Ltd. v. Twitter, Inc.*, 2015 WL 7776758, at *12 (Del. Super. Ct. Nov. 20, 2015) (denying motion to dismiss promissory estoppel claim where plaintiff alleged that defendant promised plaintiff it was an approved buyer for its shares and orally encouraged plaintiff to continue to work on the investment transaction at issue).

security specifications, were actionable promises because they were representations of fact made to induce vendors to develop Visa-approved products. *ATM* at \*8. Similarly, Visa's statements to Kroger were intended to induce Kroger to use certain specifications for chip-enabled terminals. Compl. ¶¶ 70, 75, 77, 119-121. Like the plaintiff in *ATM*, which developed the ATM technology at issue to follow Visa's specifications, Kroger developed its terminals to follow Visa's specifications regarding chip card technology. *ATM* at \*9; Compl. ¶¶ 69, 75, 77, 122-123. Like the plaintiff in *ATM*, Kroger communicated with Visa during the development and testing of its POS terminals. *ATM* at \*10; Compl. ¶¶ 66-71, 121. Finally, like the plaintiff in *ATM*, Kroger incurred significant costs in following Visa's specifications, only to have Visa change its mind to Kroger's detriment. *ATM* at \*10; Compl. ¶¶ 122-124. These facts supported a promissory estoppel claim in *ATM*, and they support Kroger's promissory estoppel claim here.

## III.     KROGER REQUESTS LEAVE TO AMEND IF NECESSARY

Kroger believes that its Complaint is legally sufficient. However, in an abundance of caution, if this Court is inclined to grant any part of Visa's Motion to Dismiss, then Kroger requests leave to amend its Complaint. The Sixth Circuit has observed that "[w]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 415 Fed. Appx. 608, 614 (2011); *see also* Fed.R.Civ.P. 15(a)(2) (court "should freely give leave" to amend "when justice so requires").

## IV.     CONCLUSION

For the foregoing reasons, this Court should deny Visa's motion to dismiss.

Dated: September 15, 2016          Respectfully submitted,

By: _____

    Richard Alan Arnold, Esquire
    William J. Blechman, Esquire
    James Almon, Esquire
    KENNY NACHWALTER, P.A.
    1441 Brickell Avenue
    Suite 1100
    Miami, Florida 33131
    Tel: (305) 373-1000
    Fax: (305) 372-1861
    E-mail: rarnold@knpa.com
            wblechman@knpa.com
            jalmon@knpa.com

    – and –

    David S. Blessing (#0078509)
    William H. Blessing (#0006848)
    THE BLESSING LAW FIRM
    119 East Court Street
    Suite 500
    Cincinnati, Ohio 45202
    Tel: (513) 621-9191
    Fax: (513) 621-7086
    E-mail: david@blessing-attorneys.com
            bill@blessing-attorneys.com

    *Counsel for Plaintiff The Kroger Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2016 a true and correct copy of the foregoing was

served via e-mail upon the following counsel of record:

David P. Kamp, Esquire
Jean Geoppinger McCoy, Esquire
WHITE, GETGEY & MEYER CO., L.P.A.
1700 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
Tel:  (513) 241-3685
E-mail:  dkamp@wgmlpa.com
            jmccoy@wgmlpa.com

Mark R. Merley, Esquire
Matthew A. Eisenstein, Esquire
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 942-5000
E-mail:  mark.merley@aporter.com
            matthew.eisenstein@aporter.com

Michael S. Shuster, Esquire
HOLWELL SHUSTER & GOLDBERG LLP
750 Seventh Avenue
26th Floor
New York, N.Y.  10019
Tel:  (646) 837-5164
E-mail:  mshuster@hsgllp.com

***Counsel for Defendant Visa Inc.***

_____
James Almon

549112.1

22